## SLAUGHTER *vs.* CUNNINGHAM.

1. A transcript from the records of a foreign court, whether of general or special and limited jurisdiction, is admissible evidence in the courts of this State, if properly authenticated; and our courts are bound to presume that the foreign court had jurisdiction of the subject matter upon which it professes to adjudicate, until the contrary appears.

2. In detinue for a slave, the defendant introduced as a witness the father of his vendor, who testified, that he held an order on defendant from said vendor for the balance of the purchase money, which was to be paid at the termination of the suit, and that said vendor had given this order as a present to his mother, who was the wife of the witness: *Held*, that the witness was incompetent, from interest, to testify for defendant.

3. Where plaintiff claims as trustee for his grantor's children, under a deed made while said grantor was a minor, the defendant may show that the grantor disavowed the act after he became of age, and made another disposition of the property; and for this purpose, a deed of revocation and a bill of sale from the grantor to himself are admissible evidence.

4. A release from a stranger, or a transfer of all his interest in the property, is admissible evidence for the defendant in detinue, as tending to show title in himself.

5. Defendant claimed under a bill of sale from plaintiff's grantor, executed after he became of age, and said grantor derived his title from his grandfather's will, bequeathing the slave to him and his elder brother; plaintiff

introduced evidence tending to show a division of the slaves between the two brothers while the younger was a minor, and that the elder was satisfied with it : *Held*, that defendant might introduce rebutting evidence, showing that the elder brother was dissatisfied with the division, and that defendant had paid him for his claim to the slave in suit.

6. Where slaves are bequeathed to two brothers jointly, and after the elder becomes of age a division of them is made by him and his father, the latter acting for his infant son, the division is binding upon the minor until he dissents from it ; and if he ratifies it, the elder brother cannot avoid it.

7. A deed of gift, executed by a minor in trust for his children, is not void, but voidable merely ; and in a contest between the trustee and a subsequent purchaser from the grantor, the question of the disavowal of the gift should be left to the decision of the jury.

8. And if the minor acknowledge the deed in open court, this does not render it irrevocable, nor require that the revocation should be made in open court after notice to the parties ; when the grantor retains possession, any act on his part after attaining his majority which shows to the world that he does not intend to be bound by his deed, is sufficient to revoke it.

ERROR to the Circuit Court of Chambers.

Tried before the Hon. ROBERT DOUGHERTY.

DETINUE by Bryant Slaughter against William H. Cunningham, for a slave named Mary. The only plea was, the general issue, with leave to give any special matter in evidence. It appears from the bill of exceptions, that the plaintiff claimed title under a deed of gift from Champion T. Stallings to him as trustee, in trust for the benefit of the said grantor's daughter, then living and named in said deed, and such other children as he might have by his then present wife, whose maiden name was Mary L. Slaughter. This deed, dated August 7th, 1845, was executed while the grantor was a minor, and was by him acknowledged in open court, before the Hon. George W. Stone, at the Fall term, 1845, of the Circuit Court of Chambers. The plaintiff offered said deed in evidence, and proved that the slave was in said grantor's possession at the time of its execution ; but it does not appear that any change of possession took place when said deed was executed or delivered.

For the purpose of showing title in himself, the defendent first offered in evidence a transcript of the records of the Court of Ordinary for Jasper County, Georgia, purporting to be a copy of the last will and testament of William Traylor, the grandfather of said Champion Stallings. This will contains the fol-

lowing clause: "Item, To my grandchildren, William J. Stallings and Champion T. Stallings, I give and bequeath a negro girl named Julia; also, two cows and calves, bed and furniture, bedstead, chest and spinning wheel; all of said property to remain in the family until the youngest child, Champion T. Stallings, becomes of age." Said will purports to bear date on the 2d day of November, 1826, and to have been proved in open court by the subscribing witnesses, on the 7th day of May, 1827. The action of the Court of Ordinary upon it is as follows:

"GEORGIA, Jasper County : } Court of Ordinary, May Term, 1827.

Personally came into open court the subscribing witnesses to the foregoing will (naming them), who depose and say, that they saw William Traylor sign, seal, publish and declare this instrument of writing to contain his true last will and testament, and at said time was of sound, disposing mind and memory.

Subscribed and sworn to, in open court, this 7th day of May, 1827.
A. R. BUCHANAN, C. C. O. } GREEN D. BRANTLY, CHRISTOPHER DEADWILDER, PASCHAL TRAYLOR.

Registered 19th of May, 1827, A. R. BUCHANAN, C. C. O."

The authentication of the transcript is as follows.

"The State of Georgia, Jasper County : } I, Davis Lane, Clerk of the Court of Ordinary of Jasper County, in the State of Georgia, do hereby certify, that the above and foregoing is a true copy and transcript of the last will and testament of William Traylor, late of said county, deceased, together with the probate and registration of the same, as fully as the same is of record and on file in my office.

Given under my hand and the seal of my office, which is the seal of the said Court of Ordinary, at Montecello, in [L. S.] the County of Jasper, in the State of Georgia, on the second day of October, 1849.

DAVIS LANE, C. C. O.,
Jasper County, Georgia."

"The State of Georgia, Jasper County. } I, James M. Williams, one of the justices of the Inferior Court of the County of Jasper, in the State of Georgia, which said justices of the Inferior Court are the Court of Ordinary for said county,

and have, when sitting for ordinary purposes, original jurisdiction of all matters and things touching the probate of wills, the granting of letters testamentary thereon, the granting of letters of administration on estates intestate and other estates, and of letters of guardianship of the person and property of all orphans, illegitimate children, idiots, lunatics and insane persons, within the county, and the care of their estates, do hereby certify," &c., in the usual form as required by the act of Congress; and then follows this additional certificate: "And I do further certify, that there is no judge, chief justice, or presiding magistrate of said court; that the same is composed of five justices, each of whom have and exercise co-equal and co-ordinate powers and jurisdiction; all of which I, the said justice, do hereby certify," &c.

In connection with this transcript, the defendant offered in evidence certain statute laws of Georgia, which are not set out in the bill of exceptions. The plaintiff objected to said transcript going in evidence to the jury, and in support of his objection read certain statutes of Georgia, which are also omitted from the bill of exceptions. He objected to the transcript being read, first, because there was no proof by the record, or to the court, that said Traylor was dead; secondly, because it did not appear, from anything on the face of the proceeding, that said Court of Ordinary had jurisdiction to admit said will to record; thirdly, because it did not appear there was present, when said will was probated or admitted to record, the number of justices required by law. The court overruled all these objections, and admitted the transcript; and the plaintiff excepted.

The defendant then introduced as a witness one Jeremiah Stallings, the father of the said Champion, who testified, that said Champion was born on the 8th of March, 1826; that witness was present at the trade between defendant and said Champion for the negro now in suit, which took place in the last of July, or first of August, 1847, just before said Champion left, to join the United States army in Mexico as a volunteer; defendant had said slave in his possession at the time, and had had her since September or October, 1843; witness did not see the bill of sale executed, but saw a paper which they said was a bill of sale. On cross examination witness stated,

" that he held an order on defendant, which his son gave him, for whatever was coming to him, said Champion, on account of said sale, after deducting what he (Champion) owed defendant; this order was given to witness by his son, and the money was to be paid at the termination of the suit; his son had (*given ?*) this order, or its proceeds, as a present to his mother, the wife of witness, when he was about leaving for Mexico ; witness did not know how much would be coming on it ; it did not specify any amount, but there would be some amount coming on the order." On this state of facts, plaintiff moved to exclude the evidence of the witness, on the ground of interest ; but the court overruled the motion, and plaintiff excepted.

The plaintiff then proved by said Stallings, on his further cross examination, " that in 1843 or 1844, after said William J. Stallings had come of age, witness, at the request of said William J., made a division of the negro woman Julia and her four children between his said two sons ; that he gave to said William J. the three youngest children and $50 in money, and to Champion T. the woman Julia and her daughter Mary, who is the slave now sued for ; that this division was as just and equal as he could make it ; that said William J. was satisfied with it at the time, and took his negroes off home, (he being married and living by himself at the time,) and has never given them up, or brought them back for re-division, and that he has since sold them ; witness was also satisfied with this division ; said Champion was married after this division took place, but before he came of age ; and the deed of gift under which plaintiff claims, was made after his marriage, and before he came of age."

The defendant then offered in evidence a deed or declaration of revocation, executed by said Champion T. on the 23d of March, 1847, specifically revoking the said deed of gift under which the plaintiff claimed. This deed was proved to have been executed on the day of its date. The plaintiff objected to its admission in evidence, " because it was an *ex parte* transaction, of which he had no notice, and because it was illegal and irrelevant evidence to show a revocation. The court overruled the objection, and allowed the deed to be read ; to which plaintiff excepted."

The defendant then offered in evidence, after having proved

Slaughter v. Cunningham.

its execution by one of the subscribing witnesses, a bill of sale for the negro in suit, from said Champion to defendant, dated April 12, 1847; the consideration expressed therein being $500 in hand paid. On cross examination, this witness testified, "that said bill of sale was written by one of the defendant's counsel, and said deed of revocation was written by defendant himself; that all the consideration which defendant had paid for said slave, within his knowledge, was the sum of $16, which defendant assumed, some time in May, 1847, to pay one W. T. Wood on account of what said Champion owed him; that nothing was paid by defendant at the time said bill of sale was made; that nothing has been paid, within his knowledge, by defendant, since its execution, except said sum of $16. It was not shown that said Champion could read or write; neither did defendant prove that said several instruments were read to him before he signed them." The plaintiff objected to the admission of this deed in evidence, "as illegal, irrelevant and incompetent evidence to show a revocation of said deed of gift"; but the court admitted it, and plaintiff excepted.

The defendant then proved, and offered in evidence, an instrument in writing executed by William J. Stallings on the 12th of April, 1847, assigning and transferring all his interest in the slave to the defendant, for valuable consideration. "Plaintiff objected to this instrument going in evidence, as being illegal, irrelevant and incompetent proof for any purpose, under the facts now before the court. The court overruled the objection, and plaintiff excepted. This bill of sale was admitted by the court, on the ground that the proof tended to show, that, after the division of the property as above shown, said William J. had become dissatisfied with said division, and claimed something more, and that defendant paid him the sum of $55, the amount mentioned in said bill of sale, for his claim to the slave now sued for. This proof was also objected to by plaintiff; which objection was overruled, and plaintiff excepted. The defendant also proved by a witness, that, before the probate of the will of William Traylor, said Traylor was dead. Plaintiff objected to this evidence; but his objection was overruled, and he again excepted."

"On this state of facts, the court charged the jury, that, if they believed the deed of gift under which plaintiff claimed was

18

made by Champion Stallings, after his marriage, and after the birth of his first child, but before he came of age, and that the slave sued for was one of the children of the woman Julia, given to William J. and Champion T. Stallings by the will of William Traylor, then they must find for the defendant. To this charge plaintiff excepted, and asked the court to charge : 1. If Champion T. Stallings, after his marriage and the birth of his first child, and while he was in possession of the property named in the deed of gift, under the division made by his father as shown in evidence, but before he came of age, executed the said deed of gift, as shown in the evidence, and that the same was acknowledged in this court at Fall term, 1845, as shown in evidence, then said deed was valid and irrevocable. 2. That the deed of gift under which plaintiff claimed could not be revoked, except by appearing in open court, and making the act of revocation, as the acknowledgment of the execution of the deed had been, unless the defendant had shown actual notice to plaintiff of the revocation of this deed of gift in the manner shown in evidence. The court refused to give these charges, and plaintiff excepted."

The errors now assigned are, the several rulings of the court shown in the bill of exceptions.

WHITE & PARSONS, for plaintiff in error :

1. The transcript from the Court of Ordinary from Jasper County, Georgia, ought not to have been admitted as evidence. By the agreement of counsel, of record, any and all statutes of Georgia, found in Prince's Digest, were regarded as in evidence, and may now be regarded as inserted in the record. The Court of Ordinary, in Georgia, is a court of limited jurisdiction.—3 Ala. 670; McCartney v. Calhoun, 11 *ib.* 118. All such courts must show, on the face of their proceedings, the facts necessary to give them jurisdiction.—Com'mrs' Court of Talladega v. Thompson, 18 Ala. 694, and authorities there cited. That case was reversed, because the record did not " affirmatively show the jurisdiction of the court over the road." In the case at bar, the transcript does not show that a quorum of the justices who compose the court were present at the time the will was admitted to record. The paper is no record at all, for there is nothing to show that it was ever admitted to record in

Georgia ; indeed, when we look at the statute, we must come to the conclusion that it never has been recorded.—Prince's Digest, p. 240, § 7. There must be a majority of the justices to hold the court on the first Monday in every month ; but two or more may admit an executor to prove a will, though it cannot be admitted to record until a regular term.—*Ib.* There is nothing in the transcript to show, that William Traylor was dead at the time this paper was made. The proof made on this trial cannot aid the transcript ; this fact is indispensable to the jurisdiction of the court.

2. Jeremiah Stallings was an incompetent witness : he was directly interested in sustaining the defendant's title to the slave, so that the money might be paid on the order in his wife's favor. A gift to his wife, was a gift to him.

3. The deed of William J. Stallings to defendant was inadmissible : it was the act of a third party, and should have been excluded.

4. The first charge given cannot be sustained : it relieves the defendant from making proof of the revocation of plaintiff's deed ; this was indispensable.—17 Wend. 135, 136, and cases cited in opinion. It was, also, an erroneous construction of that clause of the will of Traylor which gives the slave Julia to his grandchildren. This provision was made for the benefit of Stallings' family ; if he was willing to waive it, and William J. was satisfied with it, and was of age at the time of the division, there is no one to complain of it, unless Champion T. does. But he does not complain, but is satisfied with the division. William J. was of age at the time, and a married man ; he has kept the slaves which he got by the division, and though he extorted something more from Cunningham, yet that cannot be to the injury of plaintiff. The case of Johnson v. Culbreath, 19 Ala. 348, does not apply to this. Moreover, Cunningham had admitted the title of Champion T. to be good, by purchasing from him : he was estopped from saying that it was not good.—Brown v. Ayers, 14 Johns. 224 ; Duncan v. Harder, 4 *ib.* 210 ; 6 *ib.* 36 ; 7 *ib.* 158. But the deed under which plaintiff claims was irrevocable. It was a provision for his children, which the law will sustain. An infant may marry, and may make a marriage settlement.—Kent's Com., 2 vol., pp. 76, 77, 243. Then why may he not provide for his offspring ? It is a clear duty.

Slaughter v. Cunningham.

S. F. RICE and J. FALKNER, *contra :*

1. The legal proposition asserted in the charge given by the court, is, that if the defendant, in an action of detinue, brought by a plaintiff who claims under one of two joint owners, does connect himself with the title through the other joint owner, he may avail himself of the rights which he has thus acquired, in bar of the action. This is sound law.—Wright v. Bennett, 3 Barb. Sup. Ct. Rep. 451 ; Bell v. Hogan, 1 Stew. R. 536 ; Miller v. Eatman, 11 Ala. R. 609. The defendant not only showed a conveyance from one of the joint owners (William Jesse Stallings), but also a conveyance from the other joint owner (Champion T. Stallings), who was the grantor of the plaintiff, and who conveyed to defendant a few days after he arrived at lawful age. The only claim of plaintiff was a voluntary deed, executed by said Champion T. Stallings during his infancy, unaccompanied by the possession of the property, which remained with said Champion until his conveyance to defendant. " On this state of facts" the charge given was clearly correct, for it must be construed with reference to the facts.

2. The defendant having a conveyance from said Champion (the grantor of plaintiff), made some few days after he arrived at lawful age, had the right to show, if he could, that the voluntary deed executed to the plaintiff by said Champion, during his minority, had been disaffirmed and revoked by him on his arrival at lawful age, or soon thereafter. For that purpose, the several instruments executed by said Champion, to-wit : the one dated 23d March, 1847, and the other dated 12th April, 1847, were competent evidence.—15 Ohio R. 192 ; 5 *ib.* 251 ; 7 Blackford's R. 442 ; 11 Johns. R. 541 (top page 601) ; 14 *ib.* 124 ; 10 Peters' R. 58 ; 15 Wendell's R. 631 ; 17 *ib.* 119.

3. The transcript from Georgia was properly certified—the certificate showing that there is no chief justice, &c. ; and the statutes of Georgia also showing the same facts set forth in the certificate.—See White v. Strother, 11 Ala. 720 ; Huff. v. Campbell, 1 Stew. R. 19 ; Dozier v. Joyce, 8 Porter's R.

4. The grant of letters, or the probate of a will, is *prima facie* evidence of the death of the testator. But the death of the testator " before the probate of the will," was positively proved by a witness on the trial of this cause.

5. Both the charges asked were correctly refused. The first,

Slaughter v. Cunningham.

if given, would have rendered an explanation necessary.—Ross v. Ross, 20 Ala. Rep. Neither of these charges was authorized by the evidence, nor by the law.

GIBBONS, J.—There was no error in allowing the transcript from the records of the Court of Ordinary in Jasper County, Georgia, to be read in evidence to the jury. No objection was made to the authentication of the transcript, as not being in conformity to the requirements of the act of Congress upon that subject, but it was objected, 1st, that the record does not disclose the fact that William Traylor, whose will was proved, was dead ; 2d, that it did not appear, from anything on the face of the proceedings, that said Court of Ordinary had jurisdiction to admit said will to record ; and, 3dly, that it did not appear there was present, when said will was probated, the number of justices required by law. In support of these objections, the counsel for the plaintiff in error cite the case of the Commissioners' Court of Talladega v. Thompson, 18 Ala. 694, to the effect that the proceedings of a court of special, limited jurisdiction must show affirmatively, on their face, their jurisdiction over the subject matter, or their proceedings are void ; and other decisions of this court to the same effect. That this is the correct view to take of the proceedings of courts of special, limited jurisdiction of this State, there can be no doubt. But, we apprehend, the question under consideration does not properly fall under the authority of this class of cases. The question here is, not directly as to the effect of the transcript offered in evidence as a decree, but whether it is competent to go to the jury as the record of a court of a sister State. In such cases, whether the record is of a court of general jurisdiction, or one of special and limited jurisdiction, courts of this State are bound to presume in their favor, to the extent that they have jurisdiction over the subject matter upon which they profess to adjudicate, until the contrary appears. This much our courts owe to the judicial proceedings of the sister States. The true rule, we apprehend, was laid down in the case of Dozier v. Joyce, 8 Porter 393, which was a case involving the admissibility of a record of the Court of Ordinary of South Carolina. The court in this case uses the following language : " The certificate and seal which gives verity to the record, establishes as well the

right of the court to adjudicate the matter contained therein (unless, indeed, the record itself discloses the want of jurisdiction), as that such facts were in truth adjudicated." This disposes of the whole of the objections raised to the transcript under consideration, and shows that the court ruled the law correctly in admitting it to the jury.

The court, in our opinion, erred in refusing to exclude the testimony of Jeremiah Stallings, as we think it apparent from his testimony that he had a direct interest in producing a verdict for the party who called upon him to testify. He stated, that he held an order from his son for the proceeds of the sale of the negro to the defendant, after deducting what was due the defendant by the said Champion T. Stallings, the son. It is true, he states, that the son had made a present of this order, or the proceeds thereof, to his mother; but she is the wife of the witness, and there is nothing in the facts disclosed that would negative the idea that the witness would have a right at least to the use of the money realized from the order, by virtue of his marital rights as husband. This is a clear and distinct interest in the event of the suit, as he states that the funds are to be paid over as soon as this suit is terminated. As every sale of personal chattels implies a warranty of title, the conclusion is inevitable, that, if the present suit goes against the defendant, neither the witness nor the mother of Champion T. Stallings gets any money on the order which he holds.

3. The deed or declaration of revocation, and the bill of sale by Champion T. Stallings, were both properly admitted in evidence, as tending to show a disavowal of the act or deed by which the plaintiff claims title. The evidence was, that this deed was made whilst Champion T. Stallings was a minor ; and the defendant had a right to show, that, after he became of age, he disavowed the act, and made another disposition of the property. The bill of sale was also properly admitted, in order to show title in the defendant.

4. Neither was there any error in the admission of the release or transfer of claim of William J. Stallings to the defendant in evidence. This testimony tended to show title in the defendant, and for that purpose was good evidence in his favor. We will not now pretend to say, that it would not have been as effectual for defendant to have shown the outstanding right in a part of

Slaughter v. Cunningham.

the property in William J. Stallings, as shown by the will of
Traylor; no such question is presented. As above remarked,
it tended to show title in the defendant, and for that purpose
was properly admitted. We see no estoppel in the facts of the
present case, as disclosed by the proofs, that would prevent the
defendant from deriving title from William J. Stallings, when
sued by the present plaintiff.

5. The proof offered by the defendant, as to the claim set up
by William J. Stallings, and of the money which he had paid
for his claim, was proper, because it tended to show that no valid
division had been made between the brothers, of the bequest
under their grandfather's will, and, also, because it was in reply
to proof brought out by the plaintiff, to the effect that a division
had been made of the property, and that Wm. J. Stallings was
satisfied with it.

6. The charge of the court, strictly considered, cannot be
sustained. It is to the effect, that if the jury believe that the
deed of gift, under which the plaintiff claims, was made by
Champion T. Stallings whilst he was a minor, and that the
slave in question was the issue of the negro named in the will
of the grandfather, William Traylor, as a bequest to Wm. J.
and Champion T. Stallings, then they must find for the defen-
dant. This charge, thus constructed, excludes from the minds
of the jury the idea of revocation, or disaffirmance of the deed
by Champion T. Stallings, and also the consideration of the
fact as to whether there had been a division of the property or
not between the brothers Stallings, legatees under the will of
Wm. Traylor. Concede, for the present, that it is the law that
a plaintiff, in the action of detinue, must show in himself the
entire legal title of the matter or thing sued for. In the pres-
ent case, there certainly was some testimony, tending to show a
valid division of the legacy between the brothers, enough, in
our opinion, to have warranted the court in having left the fact
to the jury to determine whether such a division had or had
not taken place. The division of those negroes between the
brothers, by Wm. Stallings, acting for himself after he became
of age, and Jeremiah Stallings, the father of Champion T.,
acting for the latter, then a minor, was such as, in our opinion,
would be binding upon Champion, until he dissented from it,
more especially if, after he became of age, he took possession of

the slaves set apart to him by the division, and assumed the sole management and control over them, as the proof tends to show. If he chose to ratify the acts of his father in his behalf, in the matter of the division, it was not for William J. Stallings to set it aside, as he was then twenty-one years of age, and acting for himself. It was, therefore, a matter of fact to be left to the jury, as to whether or not Champion T. Stallings ratified the division, which his father had made for him, with his brother, of the negroes named in the bequest. If he ratified it, then the legal title to the negro in question was in him; if he disavowed the division, then the legal title was in the two brothers jointly.

The same remarks apply to the deed of gift under which the plaintiff claims title. It was not void, but voidable merely. If it was disavowed by the grantor after he became of age, then it was void; but not otherwise. This fact should also have been left to the jury in the charge of the court.

There was no error in refusing either of the two charges requested by the plaintiff. These charges seem to assume, that there was something in the fact that the grantor appeared in open court and acknowledged the deed preparatory to its registry, which takes it out of the general rule which appertains generally to deeds executed by minors. In the first charge asked, it is assumed that the infant, so appearing in open court and acknowledging it, renders the act irrevocable; and, in the second, that if a revocation is possible, it must be done only by appearing in open court after notice to the parties. Such are not our views of the law, in either aspect of the case. It will be recollected, that there was no delivery of possession when this deed of gift was made; but, on the the contrary, the evidence tends to show that the possession remained with the grantor down to the time when he executed the bill of sale to the defendant. Any act, under such circumstances, on the part of the grantor, by which he shows to the world, after he becomes of age, that he does not intend to be bound by his deed, is all that the law requires to effect the revocation. The rule would be different, in some cases, if possession had passed with the deed. Then, if the object of the grant were land, an entry must be made, before ejectment would lie; and if a slave, by parity of reasoning, a demand, before trover

could be maintained.  But where the possession remains with the grantor, until he becomes of lawful age, all he would have to do would be, to disavow the title set up under the deed, and hold the property adversely to all the world.  The court, in taking the acknowledgment of the deed, does no judicial act which estops the parties, as in ordinary judgments with the suitors regularly before it.  Its duties are entirely ministerial ; and the infant appearing in open court to make the acknowledgment, could no more make the deed irrevocable, than if the deed had been acknowledged before a justice of the peace or notary public.  In both cases, the acknowledgment is made in the mode prescribed by the statute ; and the deed becomes, in the one case, by the act of acknowledgment, as irrevocable as in the other, and no more.

For the errors above noted, let the judgment of the court below be reversed, and cause remanded.