## JEMISON *vs.* SMITH.

[DETINUE FOR SLAVES.]

1. *Probate of foreign will ; necessity for.*—A foreign will must be proved to have been admitted to probate, before a certified copy of it can be received as evidence of title to personal property, or become admissible evidence under the act of congress of 1790.

2. *Judicial notice of courts.*—The courts of this State will take judicial notice of the facts, that the proceedings of courts of ordinary in a sister State, under the constitutional and statutory provisions in evidence in this case, are lamentably loose, and that their records are made up with peculiar carelessness; and will therefore, in construing the records of those courts, adopt such a construction of the language as will be most favorable to the maintenance and regularity of their proceedings, without supplying what is absolutely wanting.

3. *Probate of foreign will ; sufficiency and proof of.*—A transcript from the records of a court of ordinary, in Georgia, properly certified under the act of congress of 1790; containing a copy of a will, an affidavit be-

neath it by one of the subscribing witnesses, purporting to have been made before "J. Thigpen, J. P.," to the effect "that he believes he *assigned* his name at the last part of the within instrument of writing;" followed by an entry, stating that B. S. and J. S. were "sworn executors;" and other entries, showing that the persons so appointed discharged several executorial duties, and were recognized by the court as executors,—must, under the constitution and laws of that State, as proved in this case, be regarded as showing the probate of the will, and the appointment and qualification of the executors.

4. *Presumption of probate from lapse of time.*—Authorities cited on the question, whether the probate of a will, nearly sixty years old, would be presumed from lapse of time, under the circumstances of this case.

5. *Redundant evidence.*—Where the probate of a will is shown by a transcript from the records of the proper court, duly certified, other parts of the transcript, containing entries relating to the testator's estate, which can have no other effect than to strengthen the conclusion that the will was admitted to probate, are merely redundant evidence; and their admission as evidence is, at most, error without injury.

6. *Admissions against interest.*—The declarations of a person who has the possession of slaves, to the effect "that they had been loaned to him by the widow of S., and were held under the will of S., to be returned at her death, to be divided as directed by said will," are competent evidence against a sub-purchaser from him by subsequent contract; so also are his declarations, "that there was a dispute about the title, and he would only sell such title as he got from the sheriff, as he was informed that the heirs of S. would claim them at the death of his widow."

7. *Amendment of complaint.*—A complaint may be amended, (Code, § 2403,) by striking out the name of one of the plaintiffs, who was dead at the commencement of the suit.

8. *Motion to suppress depositions taken before amendment of complaint.* The fact that the complaint is amended, after depositions have been taken, by striking out the name of one of the plaintiffs, who was dead at the commencement of the suit, is not a sufficient ground for the suppression of such depositions.

9. *Bequest of estate for life, with remainder over; uncertainty; remoteness.* "I will and bequeath to my beloved wife Elizabeth one negro woman, named Jane, to her her life-time; then she, and all her increase from the date '97, to be equally divided among the five children, if living at that time; if not, to their heirs lawfully begotten of their body; if none such heirs, to be equally divided among themselves when the youngest child comes of age; and after my wife's life-time, the wench to be hired to support her children; if her labor will not support her children, they must all help her, as they are to reap the property; and my desire is, that the children should be kept together, and schooled upon the hire of the negroes, until they come of age to demand them—the boys at twenty-one, the girls at sixteen years of age; and till then, the hire to go to the support of all the children, both black and white. My desire is, that if any of the children should die before it comes of age, they all should have his legacy equally divided among them; and if any one of the negroes dies, they all shall make him equal with

themselves." *Held*, that this bequest was not void for uncertainty, but created a life-estate in the widow, with remainder over to such of the testator's five children as might then be living, and the lineal descendants, then in existence, of those who were dead; and that the limitation in favor of such lineal descendants was not void for remoteness.

APPEAL from the Circuit Court of Sumter. Tried before the Hon. WILLIAM S. MUDD.

THIS action was brought by James B. Smith and others, who were the children, grandchildren, and great-grandchildren of Sion Smith, deceased, against William H. Jemison; and was commenced on the 12th April, 1857. The defendant pleaded—1st, the general issue; 2d, the statute of limitations of six years. The plaintiffs claimed the slaves in controversy, under a clause in the will of their ancestor, said Sion Smith, deceased, which was in the following words : "I will and bequeath to my beloved wife, Elizabeth Smith, one negro woman named Jane, to her her life-time ; then she, and all her increase from the date ninety-seven, to be equally divided among the five children, if living at that time ; if not, to their heirs *lawfull* begotten of their body ; if none such heirs, to be equally divided *it* among themselves when the youngest child comes of age; and after my wife's life-time, the wench to be hired to support her children ; if her labor will not support her children, they all must help her, as they are to reap the property; and my desire is, that the children should be kept together, and schooled upon the hire of the negroes, *til* they come of age to demand them—the boys at twenty-one, the girls at sixteen years of age ; and *til* then, the hire to go to the support of all the children, both black and white. My desire is, that if *ary* one of the children should die before it comes of age, that they all should have his legacy equally divided among them ; and if *ary* one of the negroes dies, they all shall make him equal with themselves." The slaves in controversy were the descendants of the woman Jane, mentioned in the above-copied clause of Sion Smith's will ; were brought to this State in 1825, by one A. M.

Griffin, who had married one of the testator's granddaugh-
ters; were sold under execution against said Griffin, and
were bought at the sheriff's sale by Claiborne Griffin, who,
about the year 1840, sold them to the defendant, at less
than their full value. The testator's widow died in May,
1851.

At the May term, 1858, (Hon. A. A. COLEMAN presiding,)
the plaintiffs asked leave to amend their complaint, by
striking out the name of John Jordan, one of the plaintiffs,
who was proved, by the depositions then on file, to have
been dead at the commencement of the suit; and the court
allowed the amendment, against the defendant's objection;
to which a bill of exceptions was reserved by the defendant.

At the November term, 1858, when the cause was called
for trial, the defendant moved to suppress the depositions
which had been taken by the plaintiffs before the complaint
was amended, as above stated, because they were taken
before the said amendment was made. The court overruled
the motion, and allowed the depositions to be read; to
which the defendant excepted.

On the trial, the plaintiffs offered in evidence a transcript
from the records of the court of ordinary of Washington
county, Georgia, properly certified under the act of congress
of 1790, and containing—1st, a copy of the will of Sion
Smith, deceased, which was dated the 14th July, 1798, and
to which the names of Frederick Cooper and Elizabeth
Smith purported to be subscribed as attesting witnesses;
2d, an affidavit, of which the following is a copy:

"State of Georgia,    }    Frederick Cooper, being duly
Washington county.    }    sworn, saith, that he believes that
he *assigned* his name to the last part of the within instru-
ment of writing.                    "FREDERICK COOPER."

"Sworn to, before me, this 21st day }
of March, 1799.    J. Thigpen, J. P."    }

Beneath this certificate was an entry, or memorandum,
in these words: "Britton Smith, Jordan Smith, sworn
executors." The transcript also contained a "copy of the
bill of appraisement on the estate of Sion Smith, deceased,"

which was dated the 12th August, 1799, and purported to be "certified" by three "sworn appraisers ;" a "copy of the bill of the sale on the estate of Sion Smith," dated November, 1799, and purporting to be "certified by Britton Smith and Jordan Smith, executors;" a "copy of second inventory and appraisement," dated the 27th December, 1799, and purporting to be "certified and sworn to, 8th January, 1800," by Jordan Smith, before "T. Watts, cl'k ;" an affidavit by Elizabeth Smith and Frederick Cooper, taken by a justice of the peace, on the 8th August, 1799, to the effect that they, "having been removed by the inferior court of the county and State aforesaid from their administration on the estate of Sion Smith, deceased," "have resigned into the hands of Britton Smith and Jordan Smith, who were established executors to the last will and testament of said Sion Smith," all the property in their hands belonging to said estate ; a receipt, dated the 8th August, 1799, and purporting to be given by Britton Smith and Jordan Smith, "executors to said estate," for the property delivered to them by Elizabeth Smith and Frederick Cooper ; and several entries, purporting to show the annual income and expenditure of said estate, and to be sworn to by Jordan Smith, before a justice of the peace, in the following form :

"Book A, page 37.

"Dec. 3, 1802. The income of Sion Smith's estate,
  the hire of four slaves, amounting to.........$232 87
Expenditures of Sion Smith's estate, amounting
to........................................ 109 93

Services excepted.
JORDAN SMITH, Ex'r."

"The justness of the above sworn to,
this 7th December, 1803, before me.
I. Irwin, J. P."

The defendant objected to the reading of this entire transcript, as a whole; and also to that part which purported to be a copy of the will of Sion Smith, and to the

remaining portions, separately. The court overruled each of the objections, and allowed the transcript to be read; to which exceptions were reserved by the defendant.

During the further progress of the trial, the court allowed the plaintiffs to prove, against the defendant's objection, "that A. M. Griffin, while he was in possession of the slaves Judy and her children, said, that they had been loaned to him by Sion Smith's widow, and were held under Sion Smith's will, to be returned at her death, to be divided as directed by said will;" also, "that Claiborne Griffin, while he was in possession of said slaves, said, that there was a dispute about the title, and he would only sell such a title as he got from the sheriff, as he was informed that the heirs of Sion Smith would claim them at the death of his widow." To the admission of these declarations exceptions were reserved by the defendant.

The plaintiffs read in evidence the constitution and several statutes of the State of Georgia, relating to the organization and jurisdiction of courts of ordinary, and abolishing estates-tail, and the case of *Jordan v. Cameron*, reported in 12 Geo. Rep. 267; and the defendant read in evidence the case of *Gray v. Gray*, reported in 20 Geo. Rep. 804; all of which are made parts of the bill of exceptions. The case of *Jordan v. Cameron* was a bill in chancery, filed by the heirs, assignees and legal representatives of Sion Smith's five children, in 1852, to recover certain slaves, who were alleged to be the descendants of the woman Jane; in which the court held, that the will of Sion Smith, being more than fifty years old, "was admissible as an ancient paper," although the probate was defective. In the case of *Gray v. Gray*, the following points were decided: 1. In Georgia, it was the early policy to abolish the English law of entails and descents, so far as it tended to preserve, undivided, landed estates in families. 2. A bequest of personal property, which would create an estate-tail under the English statute *de donis*, vests an absolute, unqualified fee-simple estate in the first taker. 3. The construction of the statute *de donis* must be determined by

the English decisions.   4. Under a bequest of slaves to the testator's two daughters Jane and Sarah, to be equally divided between them; "and should the said Jane and Sarah, or either of them, die without an heir begotten of their bodies, then their part or parts to be equally divided between Polly Morrison, my said sons, and the survivor," the limitation over is void for remoteness.

The court charged the jury as follows:

"1. That if they should find for the plaintiffs, the plaintiffs would be entitled to recover reasonable hire from the death of Sion Smith's widow, as shown by the proof.

"2. That the bequest of Jane and her increase, in the will of Sion Smith, to his widow and children, and the heirs of their bodies, was not void for uncertainty.

"3. That the provisions of said will, under which the plaintiffs, as children, grandchildren, and great-grandchildren of Sion Smith, claim in this action, are not void under the laws of Georgia in evidence; and the said grandchildren and great-grandchildren can take under said will.

"4. That if they believed all the evidence before them, they had a right to presume that the said will was properly admitted to probate; and if they so believed and presumed, the copies before them were evidence of said will, to the same effect that the original would be."

The defendant excepted to each of these charges; and he now assigns them as error, together with all the other rulings of the court to which he reserved exceptions.

TURNER REAVIS, for appellant.—1. Section 2403 of the Code does not apply to a case in which one of several plaintiffs is dead at the commencement of the suit.   Such a suit is a nullity, or, at least, is subject to be dismissed when the fact is brought to the notice of the court.   Terms cannot be imposed on a dead man, nor can he be compelled to pay costs.

2. The depositions taken before the complaint was amended, ought to have been suppressed, because the amendment effected a substantial change of parties.—*Hor*-

*back v. Knox*, 6 Barr, 377. In the cases cited to this point for the appellee, the amendment worked no change of parties.

3. The transcript from the records of the court of ordinary in Georgia, containing what purported to be a copy of the will of Sion Smith, ought not to have been admitted. It does not show that the proof of the will was taken by the court; nor that the probate of it was granted by the court; nor that it was ordered by the court to be recorded; nor that letters testamentary were granted by the court; nor that any executorial bond was given; nor that any settlement by the executor was acted on by the court; nor, in fact, that any action of the judicial mind was had on any of the matters therein contained. All the proceedings appear to have been *ex-parte*, and all the affidavits to have been made before a justice of the peace. Under the constitution and statutes of Georgia, which were read in evidence, courts of ordinary are courts of limited and special jurisdiction; consequently, the record must affirmatively show the facts necessary to sustain the jurisdiction.— *McCartney v. Calhoun*, 11 Ala. 110; *Steen v. Steen*, 25 Miss. 530; *Gunn v. Howell*, 27 Ala. 663; *Wyatt v. Rambo*, 29 Ala. 510; *Lamar v. Commissioners' Court*, 21 Ala. 772; *Commissioners' Court v. Thompson*, 18 Ala. 694. In *Jordan v. Cameron*, 12 Geo. 267, the demurrer admitted, "that the will was proved and admitted to record in the court of ordinary, and that letters testamentary were issued thereon;" and yet the court expressly say, that the will was not properly admitted to record, and was admissible only as an ancient paper.

4. If the will was not probated, the paper purporting to be a copy ought not to have been received for any purpose. The rule authorizing a will, more than thirty years old, to be read in evidence as an ancient document, without proof of probate, applies only to wills devising real estate; which, in England, where the rule originated, pass the title to real estate, without probate; but a will of personalty cannot be received as evidence of title, until it has

been probated.   The rule applies, moreover, only where the original paper is produced, or a sufficient predicate is laid for the introduction of secondary evidence.—*Mitchell v. Mitchell*, 3 S. & P. 33.

5. The declarations of A. M. Griffin were not explanatory of his possession, and were clearly inadmissible.— *Allen v. Prater*, 30 Ala. 458 ; *Brice v. Lide*, 30 Ala. 647 ; *Perry v. Graham*, 18 Ala. 822 ; *McBride v. Thompson*, 8 Ala. 650 ; *Abney v. Kingsland*, 10 Ala. 355.

6. The declarations of Claiborne Griffin were mere hearsay, and were equally inadmissible.

7. The defendant, being in lawful possession of the slaves, was not liable for hire from the death of the tenant for life, but only from the time a demand was made, or from the commencement of the suit.—*Brock v. Headon*, 13 Ala. 370 ; *Vaughn v. Wood*, 5 Ala. 304 ; *Lawson v. Lay*, 24 Ala. 184.

8. The bequest, under which the plaintiffs claim, is void for uncertainty.   No sensible construction can be placed upon the words, which will harmonize all parts of the clause.   The heirs of the body, it declares, take nothing, unless all the five children be dead at the death of the mother ; and if they all be dead, and there be " none such heirs," the negroes are " to be equally divided among themselves."   In the following cases, although the language was not more ambiguous or uncertain than in this case, the bequest was held void for uncertainty : *Hoffman v. Hankey*, 3 My. & K. 376 ; *Newton v. Richards*, 2 Beavan, 112 ; *Mohun v. Mohun*, 1 Swanst. 301 ; *Abraham v. Alman*, 1 Russell, 509 ; *Bayeaux v. Beaux*, 8 Paige, 333.

9. The will attempts to create an estate-tail, or a limitation over which is too remote ; both of which are void in Georgia, where the will was made.—*Gray v. Gray*, 20 Geo. 808 ; Marbury & Crawford's Digest, 220, § 5.

Geo. G. Lyon, *contra.*—1. Section 2403 of the Code authorizes an amendment of the complaint, by striking out the name of a dead plaintiff, equally with a living plaintiff ;

13

and no inconvenience can result from such an amendment.

2. The motion to suppress the depositions was properly overruled.—*Agee v. Williams*, 30 Ala. 636; *Goldsmith, Forcheimer & Co. v. Picard*, 27 Ala. 142.

3. The transcript was properly certified under the act of congress, and was competent evidence. That the copy of the will was properly admitted, see 11 Ala. 721 ; 8 Ala. 390 ; 24 Ala. 260 ; 6 Humph. 501 ; 10 Smedes & Mar. 78 ; 2 U. S. Digest, 234, §§ 643–45.

4. The declarations of A. M. Griffin and Claiborne Griffin were made while they were respectively in possession of the negroes, and were in disparagement of their title; consequently, those declarations were admissible evidence against the defendant, who claimed under said Griffins.— 19 Ala. 722; 27 Ala. 458, 523, 651; 28 Ala. 552, 236; 29 Ala. 174, 188, 457.

5. As to the correctness of the first charge given by the court, see 12 Ala. 135 ; 23 Ala. 377; 21 Ala. 151 ; Story on Bailments, § 414.

6. As to the correctness of the second charge, see 21 Ala. 459 ; 23 Ala. 818 ; 25 Ala. 292.

7. As to the correctness of the third charge, see same cases ; also, 18 Ala. 149 ; 17 Ala. 62 ; 7 Ala. 246 ; 2 Jar. on Wills, 51, note 1 ; 3 Porter 452.

8. As to the correctness of the fourth charge, see *Gantt's Adm'r v. Phillips*, 23 Ala. 275, and cases there cited.

A. J. WALKER, C. J.—If the will of Sion Smith was not admitted to probate, it follows, that it cannot be read as evidence of title to personal property, and that a copy of it cannot be certified, so as to become evidence under the act of congress of 1790. It is, therefore, a very important question, whether the transcript of the court of ordinary for Washington county, Georgia, shows that there was a probate of the will. All that we find in the transcript, bearing upon this point, is an affidavit by one of the subscribing witnesses, that "he believes that he *assigned* his name at the last part of the within instrument of writing," taken

Jemison v. Smith.

before " J. Thigpen, J. P. ;" and following the affidavit, an entry that the executors were sworn. The record also shows, that the executors discharged several of the duties of the executorial trust, and were recognized as executors by the court.

[2.] We must judicially know, that the proceedings of courts of the grade and jurisdiction of the court of ordinary in Georgia, as indicated by the constitution and laws of the State in evidence in this case, are lamentably loose, and that their records are made up with peculiar carelessness. It is the duty of courts, in which the validity of such proceedings is assailed, to construe the language used in a light as favorable to their maintenance as it will admit, without undertaking to supply that which is absolutely wanting.— *King v. Kent*, 31 Ala. 542.

[3.] In the probate of wills, there is but little formality. It seems that there was, under the ecclesiastical law, no formal announcement of the judgment of the court upon the sufficiency of the proof; but the proof made was endorsed upon the will, and letters testamentary issued to the executors.—2 Swinburn on Wills, 806 ; 1 Williams on Ex. 239 ; Dayton on Surrogates, 194 ; *Slaughter v. Cunningham*, 24 Ala. 260. It is not shown to us, that, at the time when the will now under consideration was recorded, there was any law in Georgia, requiring any greater particularity. Indeed, the exemplification of a will, with no greater evidence of probate, was by this court, in *Slaughter v. Cunningham, supra,* held admissible in evidence, upon certificates pursuant to the act of congress of 1790. The only manifestation of the judgment of the court upon the sufficiency of the proof, which seems to have been in practice given, where greater formality was not exacted by the statute, was the letters testamentary, and the recording of the instrument. We accordingly find the expressions probate and letters testamentary used as convertible terms.—1 Williams on Ex. 239; Dayton on Sur. 194 ; 1 Jar. on Wills, 214, chap. ix, § 1 ; *King v. Netherseal*, 4 Term, 258. In the case of *Lay v. Kennedy,*

(1 Watts & Ser. 396,) there was no judgment as to the sufficiency of the proof; and the court said: "Although there is no formal decree, that the proof of the will was deemed good; yet that the will was admitted to probate we cannot doubt, as otherwise the grant of the letters of administration would be preposterous and absurd." It is thus evident, from the practice in the proving of wills, from the manner in which the terms probate and letters of administration are used, and from the very nature of the acts themselves, that the court, in spreading the will upon the record, and granting to the executors authority to execute it, does assert the establishment of the will in its judgment. We think, therefore, that the record, upon a fair construction, must be regarded as asserting the appointment and qualification of the executors, and that the will was put upon the record; and these facts involve in themselves an assertion of the probate of the will.

The sufficiency of the proof was a question for the court which took the probate, and its decision cannot be collaterally assailed. It is, therefore, not important for us to inquire, whether the affidavit in the record should be intended to be the only proof upon which the court acted, or whether it was sufficient.

[4.] The view of the subject which we have taken, also renders it unnecessary for us to inquire, whether, from lapse of time, the probate could be presumed, under the circumstances shown; but upon that point we subjoin a list of authorities, which pertain to the question, whether such presumption might be drawn: *Jordan v. Cameron,* 12 Georgia, 267; *Calvert v. Fitzgerald,* Littell's Sel. Cas. 388–392; *Battle v. Holley,* 6 Greenleaf, 145; *Giddings v. Smith,* 15 Verm. 344; *McArthur v. Carrie,* 32 Ala. 75, and cases cited.

[5.] The other parts of the Georgia record, besides the will, affidavit, and appointment of executors, could have had no other effect, than to support the conclusion that the will was admitted to probate; and there could be no injury from their admission in evidence.

[6.] The declarations of A. M. Griffin and Claiborne Griffin were admissible in evidence. They were the declarations of persons, under whom the defendant held, adverse to their interest; and were relevant, because they contributed to the identification of the property, if for no other reason.

[7–8.] The two points made by the appellant, that the court had no authority to allow an amendment, by striking out the name of a plaintiff who was dead at the commencement of the suit, and that depositions taken before the amendment should have been suppressed, are alike unmaintainable. The statute authorizes the making of amendments, by striking out the names of parties; and we can perceive no reason for restricting the authority to cases where the party was living at the commencement of the suit. As the amendment did not vary the issue, or render the testimony inapplicable, and there was nothing in the fact that the deposition was taken before the amendment calculated to injure the defendant, neither justice, nor any rule of practice known to us, required that the depositions should be suppressed.—*Goldsmith v. Picard*, 27 Ala. 142; *Agee v. Williams*, 30 Ala. 636.

[9.] We cannot agree that the clause of the will, under which the plaintiffs claim, is void for uncertainty. "In order to avoid a will for uncertainty, it must be incapable of any clear meaning."—*Mason v. Robinson*, 2 Sim. & Stu. 295. Such is not the character of the item of the will which we are called upon to construe. We think we take no undue liberty with the words, when we interpret it as creating a life-estate in the widow, with remainder to the five children of the testator, if living at her death; and if any of the five children should die before the death of the widow, then to such of the five children as might be living at that time, and the then existing heirs of the body of such as might be dead; and if any of the five children should die before the death of the widow, and leave no descendants, then to the surviving children. The exigency of this case does not require us to extend our construction

farther. It is unnecessary for us to inquire into the effect of the provision, "that if any one of the children should die before it comes of age, that they all should have his legacy divided among them." It does not appear that any of the children died before coming of age. It is manifest, however, that the operation of this clause would be perfectly consistent with that of the previous item, except in the single contingency of some of the children dying under age leaving issue. Whether, in that contingency, such a construction could have been adopted as would have reconciled the two clauses, it is unnecessary to inquire. The phrase *heirs of the body* is shown by the context to have been used in the sense of lineal descendants living at the death of the tenant for life, or at the time when the youngest child should come of age.—*Powell v. Glenn,* 21 Ala. 458 ; *Williams v. Graves,* 17 Ala. 62 ; *Flinn v. Davis,* 18 Ala. 132 ; *Bell v. Hogan,* 1 St. 536.. The limitation over upon failure of heirs of the body was, therefore, not too remote ; and the persons who, at the designated time, answered to the legal description of heirs of the body, would take in default of such of the testator's five children as might not then be living.—*Shackleford v. Bullock,* 34 Ala. 418 ; 2 Jar. on Wills, 1–17.

Judgment affirmed.