# JEMISON & SLOAN *vs.* DEARING'S EXECUTORS.

[ACTION ON PROMISSORY NOTE, BY PAYEE AGAINST MAKERS.]

1. *Redundant evidence.*—The admission of redundant evidence is, at most, error without injury.
2. *Burden of proof, as to liability of partner on promissory note executed in partnership name.*—A promissory note, executed by one partner, during the existence of the partnership, and in the name of the partnership, is, *prima facie*, binding on the other partners, and throws on them the *onus* of disproving their liability; and this principle is applicable to limited partnerships.
3. *Abstract charge.*—A charge asked, which, although it may assert a correct legal proposition, is abstract, is properly refused.
4. *Liability of hirer, on note given for hire of slave.*—The maker of a promissory note, given for the hire of slaves, may be liable thereon, although the slaves never went into his possession, since his failure to receive them may have been caused by his own refusal, and not by the fault of the owner.
5. *Variance in description of note.*—Under a complaint, in the form prescribed by the Code, for an action "by payee against maker," (p. 551,) charging the defendants as joint makers of a promissory note, a recovery may be had on proof of a note signed by them as partners, or executed by one of them, during the existence of the partnership, in the partnership name.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before the Hon. JOHN HENDERSON.

THIS action was brought by the executors of James H. Dearing, deceased, against Robert Jemison and Fletcher Sloan; and was commenced on the 1st March, 1862. In the summons the defendants were described as "late copartners, doing business under the firm name of Jemison & Sloan"; but the complaint contained no such description, and averred the cause of action to be "two promissory notes, made by them, as follows: one note for six hundred dollars, made by them on the 20th day of December, 1859, and payable to the plaintiffs' testator, on the 1st day of January, 1861; and the other note for three hundred and eleven 50-100 dollars, made by them on the 27th Decem-

ber, 1859, and payable one day after date, to plaintiffs' testator. A judgment by default was rendered against the defendant Sloan. The defendant Jemison pleaded the general issue, and *non est factum;* and issue was joined on these pleas.

On the trial, as the bill of exceptions shows, the plaintiffs read in evidence, after proving their execution, certain articles of partnership between the defendants, of which the following is a copy:

"Articles of partnership, between R. Jemison, jr., and Fletcher Sloan, made and entered into the 14th day of January, 1858. Whereas, said parties did, on or about the — day of ——, in the year 1856, contract with the trustees of the Alabama insane asylum, to do the carpenter's and joiner's work of said hospital buildings, together with certain iron work connected therewith, as is more fully specified in their contract for the same; and whereas, the carpenters and laborers hired for said job could not be constantly and profitably employed therein, in consequence whereof other jobs and contracts were undertaken by said Sloan, and the same done by the hands hired for and employed about the hospital buildings: Now, therefore, to simplify the business, and to insure equality and justice to the parties, they agree as follows, to-wit: 1. They shall be joint and equal partners in all jobs or contracts, undertaken by said Sloan since the commencement on their contract with the trustees of the Alabama insane hospital, as well as in said hospital contract. 2. Said Sloan shall hire all necessary help, buy all necessary materials, and by and with the advice and consent of said Jemison, and generally to superintend the management and direction of the business, employment of hands, &c. 3. Said Sloan shall keep a correct account of all moneys received, or paid out; showing of whom received, to whom paid out, and on what account received or paid; and in all cases shall take the necessary and proper vouchers. He shall also keep regular time-tables, showing the time made by each hand, and at what work or job he was employed. 4. All contracts, amounting to two hundred dollars, shall be in writing, and copied in a book kept for that purpose. 5. The parties shall employ a general book-

keeper, whose duty it shall be to keep all books necessary for a full and proper understanding of the business, and to keep the same regularly and properly posted, to make such records, do all writing connected with the partnership, and keep such as may be given in his charge in proper files; for which he shall receive such compensation as may be agreed upon. 6. Said Sloan shall monthly hand over to the general book-keeper his day-book, cash-book, time-book, as well as all other books, and memorandums of original entries necessary to a correct posting of the accounts, &c. 7. Books shall first be posted to the first of January, 1858, and a statement or exhibit made, showing as near as practicable the profit or loss up to that time. After the first of January, 1858, there shall be a like statement or exhibit made at the end of each quarter; and if at the period of any exhibit, as in this article required, there shall be a surplus of funds over and above what may be necessary to carry on the business economically, such excess or suplus shall be divided; provided, no division of profits shall be made on any unfinished job or contract, except the contract upon the insane hospital. 8. All books and papers shall at all times be accessible to, and free to the examination of either partner. 9. All labor hired, and all materials furnished, shall be charged at cost. 10. For his services in superintending and managing the business, said Sloan shall receive for his services prior to the first of January, 1858, the sum of ——— dollars, and after that time a salary of five hundred dollars per annum; to be paid, in each case, out of the joint funds. 11. This partnership shall continue to the completion of this contract for the carpenter's work, &c., on the insane hospital buildings, and until notice of one of the partners of a desire for its dissolution; and upon such notice the same shall be closed and settled up as early as practicable thereafter. In testimony whereof," &c.

The plaintiff then offered in evidence the two notes on which the action was founded, having first proved, by one Foster, that said notes were in the handwriting of the defendant Sloan, "and that said partnership continued to the end of the year 1859." Both of the notes were signed " Jemison & Sloan," and corresponded in dates and amounts

with the averments of the complaint; and the larger note purported to be given "for the hire of carpenters Bob and Alfred, for the year 1860." The court allowed the notes to be read in evidence, against the objection of said Jemison, "without further proof, but subject to the charge of the court as to their legal effect." The plaintiffs then offered in evidence two accounts, which were headed "Capt. J. H. Dearing, in account with Jemison & Sloan, Dr."; and to each of which was appended a receipt, dated December 27, 1859, and signed with the name of Jemison & Sloan. The items specified in the first account, were dated in May, November, and December, 1857, and consisted of items such as—"To Bob, two days, at $2.00—$4.00"; the aggregate amount being $57.13. The items in the second account were dated in June, September, and October, 1859, and were all of the same kind as in the first, with the exception of a single charge for "shingles furnished, $49.50"; the aggregate amount being $166.13. The signatures to the receipts were proved to be in the handwriting of said Sloan. "On this proof, the plaintiffs offered to read said writings to the jury. The defendant Jemison objected to the reading of them as evidence against him, on such proof, and because they were irrelevant; which objections were overruled by the court, and said papers were read to the jury; to which the defendant Jemison excepted."

One Foster, a witness for the plaintiffs, who proved the handwriting of the articles of partnership, the notes, and the receipts appended to the accounts, "stated, also, that he was the book-keeper employed by said Jemison & Sloan under said articles of partnership; that said Sloan was a carpenter by trade and occupation, and said Jemison was not; also, that the said note for six hundred dollars was in the handwriting of said James H. Dearing, deceased; and that the date of the note had been altered, by blotting out the word *January*, and writing over it the word *December*. The plaintiffs also introduced Mr. Nicolson as a witness, who testified, that said James H. Dearing, deceased, was one of the commissioners who had the superintendence and management of the building of said asylum, with whom the contract for said carpenters' and joiners' work, referred

to in said articles of partnership, was made; that said contract was not completed by Jemison & Sloan at the end of the year 1859; that another contract, for the completion of the work, was afterwards made by said Jemison alone, by whom it was done; also, that said Dearing, Jemison, and Sloan, all lived in Tuskaloosa." The plaintiffs also offered in evidence a copy of a newspaper published in Tuskaloosa, which contained an advertisement, signed by said Jemison and Sloan, giving notice of the dissolution of their partnership. The advertisement was dated the 27th February, 1860, and stated that said partnership was dissolved on the 1st January, 1860; that all contracts, "prior to that date," would be finished by the late firm; that all claims against the firm must be presented for settlement to Jemison, and that he would make settlements with all persons who were indebted to the firm.

"This being all the evidence in the case, the plaintiffs asked the court to charge the jury, that if they believed, from the evidence, that the notes were executed by Jemison & Sloan, Sloan signing the firm name, during the continuance of the partnership, it is not incumbent on the plaintiffs, in the first instance, to show that the note was given for a partnership transaction; that it will be intended to have been made in the course of the partnership dealings; and that if it was given for the individual debt of the partner making it, with the knowledge of the party to whom it was given, these facts must be shown in defense by the party taking advantage of them. The court gave this charge, and the defendant Jemison excepted.

"The defendant Jemison asked the court to charge—

"1. That if the jury believed, from the evidence, that the note for three hundred and odd dollars was given for a consideration not relating to the business of the partnership, and this was known to the payee, then the defendant Jemison is not liable on said note, unless he consented to the giving of said note in the name of the firm.

"2. That the defendant Jemison is not liable on the note for six hundred dollars, unless the jury believe, from the evidence, that the slaves named in the note went into the

possession of the defendants under the hiring mentioned in said note.

" 3. That the plaintiffs were not, on the evidence in this case, entitled to recover against him on the note for three hundred and eleven 50-100 dollars.

" 4. That the plaintiffs were not, on the evidence, entitled to recover against him on the note for six hundred dollars."

The court refused each of these charges, and the defendant Jemison excepted; and he now assigns as error all the rulings of the court, to which, as above stated, he reserved exceptions.

RICE, SEMPLE & GOLDTHWAITE, for appellants.—1. The principles applicable to commercial partnerships do not apply to a partnership like that which existed between the defendants in this case. The articles of partnership gave Sloan no authority to execute a note in the partnership name, and the law gave him none.—*Dickinson v. Valpy*, 10 Barn. & Cress. 128; 36 Penn. St. 504, and cases cited on page 507; 2 Hare, 218; 6 Cowen, 497; 18 Penn. St. 412; 24 *ib.* 320.

2. If the notes were given by Sloan, for a consideration not relating to the partnership business, and the payee had notice of that fact, the notes were not binding on Jemison, unless he consented to their execution. There was evidence from which the jury might have inferred the existence of these facts, and its sufficiency ought to have been left to the jury.—*Livingston v. Roosevelt*, 4 John. 276; *Dickinson v. Valpy*, 10 Barn. & Cress. 128; *Foot v. Sabin*, 19 John. 157; Story on Partnership, §§ 110–13; *Bignol v. Waterhouse*, 1 M. & S. 259; *Dow v. Sayward*, 12 N. H. 275; *Maltby v. N. W. R. R. Company*, 16 Maryland, 422; 2 Comstock, 479. If it be held that there is nothing in the evidence, as set out in the bill of exceptions, which tended to prove the existence of those facts, and that, for this reason, the first charge asked was abstract; the same objection applies to the affirmative charge of the court; and, since that charge asserted an incorrect legal proposition, it must work a reversal.

3. There was a fatal variance between the notes described

Jemison & Sloan v. Dearing's Ex'rs.

in the complaint, and the notes offered in evidence. A recovery could not be had against two joint makers of a promissory note, under a complaint which charged them as partners; nor can a recovery be had against partners, under a complaint which charges them as joint makers. The partnership is a material fact, which can neither be omitted, nor supplied by intendment.— *Willis v. Green*, 5 Hill, (N. Y.) 232; *Sayre v. Frick*, 7 Watts & Serg. 383; *Dabney v. Stidger*, 4 Sm. & Mar. 749; *Hopkins v. Smith*, 11 Johns. 161; *Shepard v. Hawley*, 1 Conn. 367; 1 Parsons on Notes and Bills, 502.

WOOD & COOK, *contra.*—1. The plea of *non est factum*, though verified by affidavit, only required the plaintiffs to prove the existence of the partnership, and the execution of the notes, in the partnership name, by one of the partners.—Code, § 2278.

2. The existence of the partnership being shown, the execution of the notes by one partner, in the partnership name, is presumed to be binding on his copartner, in the absence of positive evidence to the contrary.—Parsons on Contracts, 151–70; Story on Partnership, §§ 101–02, 344; Story on Agency, §§ 37, 124; 3 Kent's Com. 40; 2 Ala. 502. The presumption is, that they were given for a consideration moving to the partnership, or relating to a partnership transaction.—6 Wendell, 615; 11 Johns. 544; 3 Ala. 11; 7 Ala. 20.

3. The first charge asked was abstract, and was properly refused for that reason, if for no other.—1 Porter, 139; 24 Ala. 458; 26 Ala. 576, 660, 728; 29 Ala. 200; 17 Ala. 249.

4. There was no variance in the description of the notes. The statute makes the notes joint and several.—Code, §§ 2142–3.

BYRD, J.—1. The accounts introduced in evidence, against the objection of the appellant Jemison, tended to prove the existence of the partnership, at and previous to the dates of the notes sued on; but, as the partnership was thus proven by other admissible and uncontroverted testimony, the admission of such accounts as evidence was

clearly an error without injury.—Shepherd's Digest, 568, § 90; *Jemison v. Smith*, 37 Ala. 185; *Mauldin v. Br. Bank at Mobile*, 2 Ala. 502.

2. When one partner affixes the name of the firm to a promissory note, during the existence of the partnership, the partners are, *prima facie*, liable thereon; and if any member thereof seeks to avoid his liability, the burden of proof lies upon him to make out his defense. Such is the rule in America.—Parsons on Partnership, 201, 202, and notes *b* and *c; Rabey v. O' Grady*, 33 Ala. 257; and see authorities cited on the brief of counsel for appellee. There is no testimony in this case, which brings it within any exception to the rule, or its application. The fact that the partnership was a limited one, as shown by the articles executed by the appellants, does not affect the operation of the rule in this case. Persons who form a partnership, thereby, as to third persons, constitute each other agents to carry on the joint business, and vouch for the integrity of each other; and the law therefore presumes that the act of each, in the name of all, is within the scope of the joint business; and if not, it devolves on the partnership to show it. Such we understand to be the reason and result of the rule. The charge given by the court, upon the evidence set out in the record, and properly admissible, is in substantial conformity with the rule above laid down, and, consequently, correct.

3. The first charge asked by the appellant, announces a clear proposition of law; but there is no evidence in the record, upon which the jury could have made any application of it; and the refusal of the court to give it did no injury to any one.

4. As to the second charge asked, we remark, that a person may have given a note for the hire of slaves, and be liable thereon, although the slaves never went into the possession of the hirer. If, by the fault of the owner, the hirer failed to obtain the possession, the latter would not be liable for the hire. But if, at the time the delivery of possession was to take place, the hirer should refuse to receive possession, or did any act which prevented the owner from delivering possession, it seems that the owner might

still recover upon a note given for the hire. If the correctness of the charge were conceded, still, when construed with reference to the testimony, it is abstract; *ergo, error absque injuria.*

5. The third and fourth charges asked may be disposed of together. It is contended that, as the complaint seeks to charge the defendants therein as joint makers of two promissory notes, and not as partners, there is a variance between the complaint and the proof, and that therefore the court should have given these charges. Upon the authority of the cases hereafter cited, and under the effect of sections 2143, 2227, and 2228 of the Code, we hold that, upon a complaint in the form of this, a recovery may be had, by the introduction of a note made by the defendants as partners. They are sued as joint makers of a promissory note; and proving that they executed it as partners, meets the requirements of the rule as to a substantial conformity between the allegations of the complaint and the proof, and authorizes a verdict and judgment in favor of the plaintiff. There is nothing in the Code, which inhibits a partnership note from being given in evidence under a complaint in form of the last on page 551 of the Code, *if* the plaintiff is the payee in the note, and the defendants are the makers, although executed by one, in the firm name. A surviving partner may be sued on a partnership debt, and a recovery had, without averring that it was a partnership debt.— 1 Tidd's Pr. 6; 1 Chitty's Pleadings. And the Code having declared, that the liability of partners is several, and therefore either might be sued on a partnership liability, it would seem to follow, from the foregoing doctrine, that partners may be declared against as joint makers of a promissory note executed in the partnership name, without averring that it was executed by them as partners, or that it was a partnership liability, and a recovery had on proof that the note was executed by one of the partners in the firm name. *Maynard v. Fellows,* 43 N. H. 255; *Tuttle v. Cooper,* 10 Pick. 281; *Cutts v. Gordon,* 13 Maine, 478; *Reddington v. Farrar,* 5 Greenl. 379; *Hartness v. Thompson,* 5 Johns. 160; *Anderson v. Henshaw,* 2 Day, 272; Parsons on Partnership, 349.

The judgment of the circuit court is affirmed.