June Term,
1860.

LEONARD
v.
WARRINER.

---

## LEONARD vs. WARRINER.

A, having contracted with B for all the wheat he should raise on 110 acres of land, at a specified price, assigned the contract to C, and authorized him to receive the wheat. C accepted from B a larger amount of wheat than he had raised on the land referred to. *Held*, that A was liable to B only for the price of the wheat raised on said land.

The fact that A was present at the delivery of the wheat, assisted in ascertaining the amount, and made no objection to the quantity, does not render him lia-

ble for that portion of the wheat not raised on the land referred to, if he was ignorant at the time that it was not raised on said land.

Under a complaint on a contract for the purchase of wheat, to be delivered by the plaintiff "at the Milwaukee and Horicon railroad depot," alleging a delivery at that place, evidence was properly admitted to show that the wheat was delivered by request of the party entitled to receive it, at a warehouse four or five rods from the depot building, and near the railroad track, and the jury were properly instructed that they should determine as a question of fact, whether the wheat was delivered at the place intended to be expressed in the contract.

A party to a suit may be sworn as a witness in his own behalf, without a previous notice, if the opposite party is present in court.

APPEAL from the Circuit Court for *Green Lake* County.

Action upon a written contract, dated June 15, 1857, by which the plaintiff had agreed to sell and deliver to the defendant, on or before the 30th of September following, at the Milwaukee and Horicon railroad depot, at Brandon, all the good merchantable wheat (except 250 bushels) which the plaintiff should raise on 110 acres of land, at ninety-six cents per bushel, to be paid on delivery. The complaint alleged a delivery of the wheat at the depot in Brandon at the proper time, and that there was due on the contract over $1,600, which the defendant had refused to pay. On the trial it appeared that the defendant had assigned the contract to one Titus, and authorized him to receive the wheat. Before the 30th of September, the plaintiff delivered to Titus, at the warehouse of one English, at Brandon, 2,166 bushels of wheat, which Titus accepted upon the contract, and a witness stated that the plaintiff and defendant and Titus figured up the amount of the wheat after it was delivered. Proof was offered to show that the wheat was delivered at the warehouse of English, by the request of Titus. This evidence was objected to on the ground that a different agreement, or waiver of the performance of the written agreement sued upon, could not be shown under the complaint; but the objection was overruled. The warehouse of English was four or five rods from the depot building. There was a railroad track near it, and there were other warehouses there with tracks running to them. The plaintiff offered himself as a witness, and the defendant objected on the ground that no notice had been given of his intention to be sworn; but

the court held that as the defendant was present in court at the time, no notice was necessary. The defendant moved for a nonsuit on the ground that the plaintiff had not proved a delivery of the wheat at the place specified in the contract, and that no different agreement, or waiver of performance was alleged in the complaint; but the motion was overruled. There was proof tending to show that a portion of the wheat delivered to Titus upon the contract had not been *raised* by the plaintiff, but had been bought by him from other persons. One Tubbs had bought a part of the plaintiff's land, and the plaintiff had taken from him two-thirds of his crop of wheat in part payment therefor, and bought of him a little less than 100 bushels besides, all of which, amounting to 375 bushels, had been delivered to Titus upon the contract. One Comstock also had rented a part of the plaintiff's land that year, paying one-half the wheat (about 300 bushels) as rent, and had sold the plaintiff about 250 bushels besides, some of which was also delivered to Titus on the contract. The plaintiff himself testified that all the wheat raised on the 110 acres, was delivered to Titus, except about 40 bushels. Another ground of defense was that the wheat was delivered under a new and different contract between the plaintiff and Titus, by which the plaintiff had agreed to give credit to Titus for the wheat and extend the time of payment, without the defendant's consent. Upon this point the plaintiff testified, that before the wheat was delivered, Titus asked him if he must have all the money when the wheat was delivered, and he replied that he wanted money, but that if Titus could not get it, and the defendant was satisfied, he might have some time. Another witness testified, that about the time they were delivering the wheat, the plaintiff told defendant that Titus wanted to send some of the wheat to Milwaukee and get advances on it, and the defendant said he had no objections; and another, that about the time plaintiff was threshing the wheat, he asked defendant if any arrangement he might make with Titus in regard to the delivery of the wheat, would be satisfactory, and the defendant said it would be. The defendant testified that the plaintiff told him that Titus wanted to send the wheat to

Milwaukee and get advances on it, in order to pay for it, and that he replied: " Fix it to suit yourself; I am satisfied ; it is nothing to me what bargain you make with Titus." He testified also that after the 12th of October, the plaintiff told him that he had made a bargain with Titus to take his wheat back again and send it to Rochester, and get what advances he could on it, and then he and Titus were to have a settlement if the wheat was sold and did not bring enough to pay him, but that plaintiff never said that he considered the defendant released from the contract. Titus testified that the plaintiff asked defendant, if he would let him send the wheat to Milwaukee to get advances on it, and the de· fendant replied, " any bargain you may make with Titus is nothing to me."

The defendant requested the court to charge the jury : " 1. That the 375 bushels of wheat got by the plaintiff of Tubbs, and by plaintiff delivered, was not raised by him, within the legal meaning of the contract, and the plaintiff was not entitled to recover therefor." This charge the court refused to give, but instructed the jury that it was a question of fact for them to determine, whether such wheat was raised by the plaintiff within the meaning of the contract.. " 2. That the amount of the wheat received by the plaintiff of the witness Comstock, raised by him on shares, and by plaintiff delivered, was not delivered within the meaning of the contract ; and the plaintiff was not entitled to recover therefor. 3. That the 250 bushels bought by plaintiff and delivered on this contract, was not delivered within the legal meaning of the contract, and for that the plaintiff cannot recover in this action. 4. That if the jury find that the place of delivery of the wheat was changed by agreement of the parties, then the plaintiff cannot recover under the pleadings in this case. 5. That the legal import of the contract is, that the wheat was to be delivered at the depot of the Milwaukee and Horicon Railroad Co., at Brandon, and a delivery at English's warehouse is not a delivery within the terms of the contract. And the plaintiff, being required to show a fulfillment of the conditions of the contract on his part, cannot recover in this suit. 6. If the jury find that the plaintiff ex-

June Term,
1860.

LEONARD
v.
WARRINER.

tended the time of payment to Titus, without the consent of the defendant, and the wheat was delivered, or a part thereof, under the agreement so to extend the time, then the defendant was discharged as to the part so delivered, and the plaintiff cannot recover therefor. 7. That the defendant is not estopped from asserting that the contract is not fulfilled in respect to the quantity of wheat raised by plaintiff, and by him delivered on the contract, even if the jury should find that the defendant was present, and assisted in figuring up the amount, and made no objection to the quantity, unless the defendant then knew where and by whom the wheat was raised." All these instructions the circuit court refused, and instead of the 5th instruction, so refused, charged the jury that "whether the wheat was delivered at the place intended by the parties to be expressed in the contract, was a question of fact for them to determine;" and instead of the 6th, charged the jury that they "must be satisfied that the plaintiff, by his arrangement with Titus, intended to release the defendant, otherwise he could recover."

Verdict for the plaintiff for $1,229 54, with interest from October 1st, 1857; and judgment accordingly.

*Wheeler & Kimball,* for appellant:

1. Under the complaint in this case, averring generally a performance by the plaintiff of the conditions of the contract on his part, evidence should not have been received to show a waiver of the performance, or a different agreement as to the place of delivery. *Warren vs. Bean,* 6 Wis., 120; 1 Kern., 32; 4 Sandf., 665; 1 Duer, 309; 5 id., 389; Van Santvoord's Pl., 235, 236, note 1; R. S., 725, sec. 35. 2. The refusal of the 1st, 2d and 3d instructions asked by the defendant, was erroneous. It was for the court to construe the contract. *Ranney vs. Higby,* 5 Wis., 62. If the contract had been properly construed by the court, the jury must have excluded all the wheat bought of Tubbs or Comstock, that received on shares of the latter, and the 250 bushels which should have been reserved by the plaintiff. 3. The court should have construed the contract as to the place of delivery (5 Wis., 62), and should have given the 5th instruction asked by defendant. 4. The plaintiff, by giving credit to

June Term,
1860.

Leonard
v.
Warriner.

Titus, without the express direction of the defendant, discharged the latter. The charge that the jury must be satisfied that the plaintiff *intended* to release the defendant, was erroneous.

*A. B. Hamilton,* for respondent.    [No argument on file.]

January 2.

*By the Court,* Dixon, C. J.    We discover no error in the proceedings below, except in the refusal of the court to give the third and seventh instructions asked by the appellant. The assignment of the contract by *Warriner* to Titus, and the subsequent delivery of the wheat by the respondent to the latter in pursuance of the assignment, and under the express or implied directions of *Warriner,* would not of themselves operate to discharge *Warriner* from his legal liability for the payment of the price.    That could only be done by the consent of the respondent, tacitly or directly given, which the jury, by their verdict, have negatived.    But admitting that *Warriner* was not released, still he cannot, under any circumstances, without his assent, be made responsible for the price of more or other or different wheat than that called for by the contract.    If the agreement had not been assigned, and he had received the wheat himself, it is very doubtful whether he would have been bound as upon the agreement for that which was fraudulently delivered, although, in ignorance of the facts, he might have accepted it. If liable at all in such a case, it would seem that he should only be liable for the actual value of the wheat thus delivered and accepted, and not for the price which might be named in the contract.    Because the article contracted for is of such a nature, that it is difficult to distinguish between that which is within the specifications and that which is not, it does not follow that the parties have a right to deceive and impose upon each other.    If they wish their contracts enforced, they must act in good faith and with common honesty.    In this case, however, there can be no pretense for charging *Warriner* with the price of any wheat which was not within the letter of the contract, although it was delivered to and accepted by Titus, and although Titus was perfectly satisfied to receive it, knowing all the circumstances.

For, conceding that, by assigning the contract to the latter, <span style="float:right">June Term.<br>1860.</span> *Warriner* made him his agent for the purpose of receiving the wheat, still the extent of that agency would be limited <span style="float:right">DAVIES</span> by the terms of the contract. He was his agent only for the <span style="float:right">TURTON et al.</span> purpose of receiving the wheat specified in the contract, and if he went beyond it, although he might bind himself, he certainly would not bind his principal. He was endowed with no discretionary power to change or enlarge the contract itself, so as to extend it to subjects not before embraced in it, and charge *Warriner* on account of them. He could bind the latter only so far as he acted within its terms; beyond this he had no authority, and could not do so. The record shows that some part of the wheat delivered to Titus was purchased, not "raised," by the respondent, and hence the instructions asked were proper and should have been given.

The judgment is reversed, and a new trial awarded.