NOTE BY REPORTER.—PECK, C. J., sat but a few days during the latter part of the term, being absent for the remainder of the time on account of sickness.

## MURRELL vs. THE STATE.

[INDICTMENT FOR ENTICING SERVANT UNDER WRITTEN CONTRACT.]

1. *Enticing servant under written contract; indictment for, when sufficient.*
An indictment under section 3691 of the Revised Code, for enticing servant under written contract, is sufficient if it states the offense in the language of the statute, although the facts which constitute the offense may be charged in the alternative.

2. *Same.*—The law in the Revised Code, against "enticing servant under written contract," is still of force, and is a valid law. It is an enactment of the legislature of Alabama, under the provisional government set up by authority of the United States, and has not been repealed, but continued in force by the recognition of the present rightful government of the State.

3. *Same; not in violation of "civil rights bill."*—Said enactment is not in violation of, or in conflict with, the provisions of the law of congress, commonly known as the "civil rights bill," It does not discriminate in favor of, or against, any class of citizens. Any person competent to make written contracts may employ laborers, or may be employed as a laborer, under its protection, without regard to race, color, or condition.

4. *Same; infancy of laborer, what no defense against.*—The infancy of the laborer interfered with is not a good defense for one who violates this law.

5. *Same; what not necessary to conviction.*—In order to convict under this statute, it is not necessary to show that the second or subsequent employer knew at the time of hiring that a previous subsisting contract existed, if, after being properly notified of the previous existing contract, he failed and refused to discharge the laborer, but still kept him in his service.

6. *Same; what contracts effected by.*—To bring a contract for hire within the provisions of this enactment, the whole contract must be in writing. Contracts by parol, although valid without reference to this enactment, and binding upon the parties, do not come within the protection of the act.

7. *Same; rights of parties to contract for labor.*—In such contracts for labor, as in other contracts, the obligation must be mutual, and if such contract be dissolved for any legal reasons, the laborer can make a second contract, without regard to the first.

APPEAL from the Circuit Court of Barbour.
Tried before the Hon. J. McCALEB WILEY.

The facts of the case are fully stated in the opinion.

SEALS, WOOD & ROQUEMORE, for appellant.
JOSHUA MORSE, Attorney-General, *contra.*

PETERS, J.—This is an indictment under section 3691, of the Revised Code, " for enticing servant under written contract." The count charging the offense is in the following words :

" The grand jury of said county charge, that, before the finding of this indictment, David Murrell knowingly interfered with, hired, employed, enticed away, or induced Jacob Hameter, being a laborer or servant, who had stipulated or contracted in writing to serve the said D. H. Hameter a given number of days, weeks, months, or for one year, before the expiration of the term stipulated or contracted for, such contract being in force and binding upon the parties thereto, without the consent of the said D. H. Hameter, to whom the service was due, given in writing or in the presence of some *reliable* white person, against the peace and dignity of the State of Alabama."

This indictment was found at the spring term of the Circuit Court of Barbour county, in this State, in the year 1870.

On the trial, it was demurred to by the accused, for the following reasons : "1st. That the indictment charges in the disjunctive several distinct offenses in the same count; 2d. That the indictment fails to aver that the servant Jake had previously contracted in writing with another, which contract was in force, and for any stipulated time; 3d. That the indictment fails to charge any offense known to the law ; 4th. That the statute under which the defendant is indicted is not in force." This demurrer was overruled by the court, and the accused pleaded "not guilty," "and went to trial before the jury upon the issue thus made."

The jury found the defendant, Murrell, guilty, and assessed a fine against him of fifty dollars. For this sum the court rendered judgment against him, and for costs. From this judgment, Murrell appeals to this court.

In appeals, in criminal cases, it is the duty of this court to look into the whole record, and render such judgment as the law demands.—Rev. Code, § 4314.

The indictment in this case is strictly analogous in form with those given in the appendix of the Revised Code. The statement of the facts constituting the offense is laid down in the very language of the statute, except, perhaps, one single word ; that is, the word *reliable* is used instead of *veritable*, before the words " white person." If this is not a clerical mistake committed in copying the indictment into the transcript, it is not such a departure from the phraseology of the Code as would *vitiate* the indictment. An indictment which pursues the language of the statute is sufficient ; and a charge in the alternative does not make it bad.—Rev. Code, §§ 3691, 4112, 4119, 4141, 4123, 4125 ; *Johnson v. The State*, 35 Ala. 370 ; *Mason et al. v. The State*, 42 Ala. 543 ; *Wicks v. The State*, June term, 1870. The statute copied into the Code was an enactment of the provisional government, which was acknowledged and recognized by the government of the United States. This law has been continued in force, by the legislative recognition of the Revised Code, as a law of the provisional government of this State.—Act of Congress to " provide for the more efficient government of the rebel States," passed March 2, 1867, § 6 ; Pamph. Acts 1868, p. 7. This statute

clearly forbids certain acts therein named, and the commission of such acts is punishable in the manner set forth in the Revised Code.

This makes such acts an offense.—Revised Code, § 3540. Then the court below did not err in overruling the demurrer to the indictment.

On the trial, it appears from the bill of exceptions that certain persons, among whom was one Jake Hameter, calling themselves " the undersigned laborers," contracted in writing with D. H. Hameter to " work on the plantation of Miss Lizzie Hameter during the year 1870." This contract was signed by said D. H. Hameter on his part, and by said Jake Hameter on his part. It bears date the 8th day of January, 1870, and was made and entered into in the county of Barbour, in this State. It appears, from the proofs, that said laborer, Jake Hameter, commenced work under said contract, and continued to labor and work on said farm until about the 22d of March, 1870, when he left the employment of said D. H. Hameter, and went to the plantation of the accused, said Murrell, and employed himself to work with him, said Murrell, on his farm, at the rate of eleven dollars per month. It was also proven, that under said contract with said D. H. Hameter, said D. H. Hameter was to furnish said laborer, Jake, with "clothing, shoes, &c., during the year, charging him therefor;" and that a few days before he (Jake) left the employment of said D. H. Hameter, he applied to him for money to buy him a coat, and said D. H. Hameter declined to let him have the money. But when he did this, he told Jake to call at his room and he would let him have one of his old coats. And when the laborer, Jake, hired to Murrell, " he was nearly naked and in great need of clothing." Jake was examined as a witness, and he stated that he had left the service of said D. H. Hameter for the reason that he could not get the coat or money to buy it, and that " immediately after leaving the service of " said D. H. Hameter, "he went up to Fort Browder and there found" the accused, " and told him," (the accused,) that " he had quit the said " D. H. Hameter, " and was hunting a place to live." And

thereupon, the accused employed him, and he had continued to labor with said accused ever since.

It was also shown that said Jake did not disclose to said Murrell, "that he was or had been under any contract, written or verbal, with said D. H. Hameter." While Jake was at work with said Murrell, and after he had left said D. H. Hameter, Murrell was informed by said D. H. Hameter that he (Jake) had contracted in writing with said D. H. Hameter to work on his farm as abovesaid during the year 1870, and requested him to discharge said laborer. This Murrell refused to do, saying—"Jake is yonder on my farm, and if you have any more right to him than I have, go and take him." And after this, said laborer still remained in the employ of said Murrell, "laboring on his farm."

It was also shown that Jake was only eighteen years of age when he entered into said contract in writing with said D. H. Hameter to labor for him as abovesaid. The venue was admitted.

Upon this testimony, about which there was no controversy, the court gave two charges to the jury and refused six others. The accused excepted to the first charge given, and to the refusal of the six charges which were denied.

The first charge was in these words: "The court, *ex mero motu*, charged the jury, that if the State proved that Jake was under a valid written contract with the prosecutor, then binding upon the parties and not terminated, and that the defendant hired Jake while this contract was in existence, and was afterwards notified of the contract and refused to discharge Jake, then, upon these facts, the defendant must be found guilty, unless the defendant proved to the satisfaction of the jury that at the time he hired him, Jake was not under a binding subsisting written contract with the prosecutor." This charge was excepted to. In it are contained the legal elements which enter into all the other charges which were given.

The charge thus given is free from any just exception. The evidence was not disputed, and the charge was not upon the effect of the testimony. It is fair, and does not mistake the law, and is applicable to the facts established by

the proofs.—Rev. Code, §§ 2678, 3691, 3693 ; *Morris v. Hall*, 41 Ala. 510.

Under this law, the whole contract must be in writing, though parties are not bound to contract in this way. They may contract by parol, if they choose, and when they contract in this latter manner, this statute does not apply. But after the contract of hiring is once entered into in writing, as required by the statute for a specified time, then any conduct of a third party which induces the laborer to leave his employment, or which induces him to remain away after he has left, if the first contract be not broken, but still subsisting and unterminated, which conduct occurs between the commencement of the employment and its end, while the contract of the first engagement remains unbroken,—this is such an interference, if knowingly committed, as the law forbids.

Both parties are equally bound to keep and perform the stipulations of the contract, and if one of the contracting parties violates its stipulations, then the other is no longer bound. But it is not necessary that the second hirer should know, at the time of entering into his engagement, that there had been a previous engagement, if after being notified that such is the fact as required by the statute, he refuses to discharge the laborer, who is still bound by a subsisting previous contract. A subsisting previous hiring, and this refusal to discharge a laborer bound by it, are *prima facie* evidence of guilt, and if these facts remain unrebutted they are sufficient to sustain a conviction. Then, the first and second charges asked by the defendant below were properly refused upon the evidence in this case.

The third charge was as follows : "That the contract read in evidence is voidable so far as Jake Hameter is concerned, if the jury believe from the evidence that said Jake is not 21 years of age."

This charge, though it may be, under some circumstances, correct as a mere abstract principle of law, is not the law applicable to this case. Infancy is a privilege personal to the infant himself alone, for his protection. He may avoid his contracts of a certain character made in minority, but the appellant in this case can not avail himself of this

privilege. Besides, the contract of an infant, in general, is voidable only, and not absolutely void, and it must be avoided before it can be said to be nought.—*Jefford's Adm'r v. Ringold & Co.*, 6 Ala. 544; 24 Ala. 420; 2 Kent, 234, *et seq.* (marg.); 23 Texas, 252; 3 Green. 343. Then the infancy of the laborer could not avail as a defense to the accused in this proceeding.

The statute certainly did not intend to exclude minors from such employments, in the present condition of affairs in this State. It must happen in frequent cases that one class of children, who are minors, have been widely separated from their parents, and who must wholly depend upon their labor for support. To declare that these children should not be able to enter into labor contracts under this statute might deprive them of the only means of subsistence within their reach, during the most necessitous period of their lives.

The evil which the statute is intended to suppress is, possibly, greater in the case of infant laborers than in that in which they are adults. There is no great interest in the State which exceeds that of the planter and the farmer in importance. It is the basis of all other branches of business among our people. It was the purpose of the legislature to protect the labor thus engaged. The evil here denounced is one of ancient date, which has occurred, and which is likely to occur again in connection with this important department of employment. At common law it was a wrong to entice away one's hired servant, and the party who did this, without a legal justification, was liable in an action at law for damages.—3 Black. Com. 142. This statute has gone farther, and has made this wrong a public offense.

The statistics of labor show that almost or quite one-half the laborers usually engaged in the business of agriculture in this State are minors. Did the legislatue intend that it should be an offense to entice away or interfere with a laborer of adult age, punishable by heavy fine, but no offense at all, if the laborer should be a minor? Certainly not. There is nothing of this kind that can be justly inferred from the language of this enactment or its purpose. Had

this been the legislative intent, there would have been a proviso to the act, by which it would have been declared that the provisions of this law did not apply where the contracting laborer is a minor. But such a proviso was not added to the act. Hence, it is not to be inferred that it was intended. In legislative enactments that which is left out, was intended to be left out. In view of this construction of this important statute, the *third, fourth* and *fifth* charges asked by the defendant below and refused by the court, and which, in effect, endeavored to set up the infancy of the laborer enticed, as a defense to the indictment, were properly refused. Their denial was not error.

The record does not show with certainty that the sixth charge was accepted to. There are two charges marked with the number "7." One of these has the word "given," and the other the word "refused," written under it. But in a subsequent portion of the transcript it is shown, that a charge marked "7" was asked and refused, and the refusal was excepted to. Both of these charges were abstract. There was no proof to support them. They were therefore properly refused.—*Gliddon v. McKinstry*, 28 Ala 408; *Stewart v. Bradford*, 26 Ala. 410; *Brown v. Jones*, 24 Ala. 463; *Jamison et al. v. Dearing's Ex'r*, 41 Ala. 283; *Martin v. Hill*, 42 Ala. 285.

It is contended by the learned counsel for the appellant, that the law, upon which the indictment in this case is founded, is void, because it is opposed to the provisions of the act of congress, sometimes called the "civil rights bill;" which is entitled "An act to protect all persons in the United States in their civil rights, and furnish the means of their vindication."—U. S. Statutes at Large, 1866, chap. XXXI, p. 27. The first section of this act defines who are citizens of the United States, and secures to them "the same rights in every State and territory of the United States" that any other citizen may enjoy. A very slight attention to the language of sections 3691 and 3693 of the Revised Code, will show that their provisions will allow any person, who may choose to do so, to hire laborers, or to be hired as laborers, on a farm or plantation. There is no discrimination in any way in favor of any person, or against

any person, of whatever race or color or condition they may be. There is no restraint imposed upon any person on either side of the contract, except that imposed by the agreement of the parties themselves. This law, then, can not be an infringement of the civil rights bill.—*Elizabeth Turner's Case*, and *United States v. Rodes*, Paschall's Ann. Const. United States, p. 273.

The judgment of the court below is affirmed. The appellant will not be released from custody until discharged by due course of law.