### W. O. BROWN ET AL. V. FARMERS AND MERCHANTS NATIONAL BANK.

#### No. 287.

1. **Minor's Executory Contract Not Void—Only Voidable.**

An executory contract of an infant is not void, but voidable at his
The promise of the minor to pay money obtained from a bank was
The promise of another to answer for such indebtedness to the ba
"promise to answer for the debts of another," within the meaning
statute of frauds. The promise in this case not being in writing, could n
be enforced ..........................................................................

2. **Liability of President of National Bank.**

The president of a bank who, by verbal promise of collateral liability, in-
duces the cashier to pay out its funds to a minor, whereby it is lost, is lia-
ble to the bank for such loss, on the ground that he has been guilty of a
breach of the trust reposed in him as such president ..................... 275

3. **Equitable Relief.**

A minor executed a deed in trust to secure his creditors, among whom were,
first, the president of the bank in his individual capacity, and second, after
such payment, the debt to the bank. It appearing that the president had
induced the cashier to advance the funds to the minor for which he was
still indebted, promising to see it paid, the court, having appointed a re-
ceiver for the trust property, will direct the payment of the debt to the
bank before that of the president........................................... 276

4. **Equitable Relief—Decree.**

The defendant adjudged liable for promoting the advances by the bank to the
infant, is only liable for the money advanced, with lawful interest. He is
relieved from stipulated attorney fees and conventional interest named in
the note....................................................................... 277

ERROR to Court of Civil Appeals for Fifth District, in an appeal from Johnson County.

The contention in this suit involved the liability of E. Y. Brown for certain debts of his nephew, W. O. Brown, incurred when he was a minor, to the Farmers and Merchants National Bank; also the liability of certain assets conveyed by W. O. Brown to J. C. Brown, trustee, in which E. Y. Brown was the preferred creditor, the bank standing next after him.

E. Y. Brown was the president of the bank when the advances (constituting the debts sued for) were made to W. O. Brown, and verbally directed the cashier to make the advances.

E. Y. Brown pleaded the statute of frauds, and other defenses discussed in the opinion.

Verdict and judgment were rendered for the plaintiff for the entire amount sued for.

On appeal the judgment was affirmed. In the opinion in the Court of Civil Appeals is the following:

"It is urged, that no personal liability exists against E. Y. Brown in favor of the bank for the money advanced to W. O. Brown, because the promise relied upon was not in writing; that it was a parol prom-

ise to answer for the debt of another, and was void under the statute of frauds.

"A promise to answer for the debt of another, unless made in writing, is void under the statute of frauds. The generally accepted construction of the statute of frauds is, that reference is here had to a ⬛ity. That the promise which is required to be in writing is ⬛o answer for a debt contracted by a person legally compe- ⬛tract the debt. If the promise is to answer for the debt of ⬛married woman, or person under other legal disability, un- ⬛the debt is created for objects for which such persons are authorized to contract, they are not legally bound upon the original contract of indebtedness, and he who promises to answer ·for such debt becomes the original primary obligor, and may be held liable as such. The undertaking does not come within the terms of the statute of frauds, and may be enforced, though it rests in parol. Chitty on Con., 499; 2 Pars. on Con., 7 ed., p. 4; Browne Stat. Frauds, sec. 156; Wood Stat. Frauds, sec. 163, pp. 303, 304; Brandt on Surety., 1 ed., sec. 44, pp. 54, 55; King v. Summitt, 73 Ind., 312; Chapin v. Lapham, 20 Pick., 470."

In the petition for writ of error this ruling was attacked by the plaintiff in error, who assigned in detail many other alleged errors.

*Leake, Henry & Reeves* and *Henry, Patton & Brown*, for plaintiffs in error.—1. The alleged promises and statements of E. Y. Brown being verbal, and so shown to be by said petition, and being mere verbal promises to answer for the debt of W. O. Brown, were within the statute of frauds and not binding on E. Y. Brown, and hence the court erred in the matters complained of in said assignments. Edwards v. Dickson, 66 Texas, 616; Jones v. Parker, 67 Texas, 82; Floyd v. Rust, 58 Texas, 508; Herm. on Estop., secs. 783, 799; Dickerson v. Colgrove, 100 U. S., 578; Mayer v. Ramsey, 46 Texas, 375; Burleson v. Burleson, 28 Texas, 416.

2. It appearing from the evidence that the alleged promises and statements of E. Y. Brown amounted simply to offers to become responsible for accounts of W. O. Brown to be created in the future, and the evidence failing to show that plaintiff ever notified E. Y. Brown of its acceptance of his said offers or that money would or had been advanced to W. O. Brown relying thereon, no liability was incurred by E. Y. Brown to plaintiff by reason of such promises. Wilkins v. Carter Bros., 19 S. W. Rep., 997; Mayfield v. Wheeler, 37 Texas, 256; Wilson v. Childress, 2 Ct. App. C. C., sec. 186; Pars. on Con., 2 ed., p. 526; Id., 17 ed., pp. 479–485; 19 Am. and Eng. Encyc. of Law, 78; 3 Id., 856; 1 Brandt on Surety. and Guar., sec. 186; Gardner v. Lloyd, 2 Atl. Rep., 562; Oaks v. Willis, 37 Am. Dec., 583; Coe v. Buller (Pa.), 1 Cent. Rep., 222.

On application for writ of error, counsel argued: Upon the issue of the minority of W. O. Brown taking the collateral promise of E.

Y. Brown to answer for his debt to appellee out of the statute of frauds, we desire to call the court's attention to the cases upon which the Court of Civil Appeals based its opinion in this case, and to show that the reason, as well as the weight of authority, is contrary to the decision of said court. All the cases cited by the Court of Civil Appeals, except, we believe, the cases of Baldwin v. Hiers, 73 Georgia, 739; White v. Culyer, 1 Espinasse, 200, and King v. Summitt, 73 Indiana, 312, are discussed, and shown not to establish the proposition asserted by said Court of Civil Appeals, by Mr. Throop, in his treatise on the Validity of Verbal Agreements.

The cases of White v. Culyer, 1 Espinasse, 200, and Baldwin v. Heirs, will be found on examination not to sustain the doctrine that a promise to answer for the debt of a minor is not within the statute of frauds. The case of Baldwin v. Hiers, 73 Georgia, 737, not only does not decide the question as appellee claims it did, but on the contrary, the court strongly intimated that if the promise upon which the suit was predicated had not created an original and not a collateral liability, it would have been within the statute and void, notwithstanding the minority of the person for the payment of whose debt it was claimed in the case the promise was made. In the case of King v. Summitt, 73 Indiana, 312, the court itself, in the opinion, held that the facts did not present a question of a promise to answer the debt of another. The case was a suit by King against Summitt upon his guaranty that a note executed by one James Hayden, a minor, to appellant, was valid and genuine, and that James Hayden was legally liable to pay it. The question which occasioned the dicta of the court on the point under discussion in this case was raised by the pleadings. The petition alleged that James Hayden, the maker of the note, was a minor, and in nowise liable to pay it. The petition was demurred to, and the court, in discussing the question on this state of pleadings, said: "It is averred that Hayden was a minor when he executed the note, and that he was not liable thereon. The demurrer admits this. If so, was there any debt?" A mere cursory examination of the opinion will show, that what the court said on the existence of minority taking the promise out of the statute was not called for by the facts of the case, and was purely dicta.

We here adopt as our argument on this question, and discussion of the cases in which the question under consideration is supposed to be decided, the language of Mr. Throop, in his work on the Validity of Verbal Agreements, sections 248–268, beginning on page 299, and beg of this court a careful consideration of the same and an examination of the cases, as we are thoroughly satisfied the Court of Civil Appeals erred on this point.

*Poindexter & Padelford* and *Crane & Ramsey*, for appellee.—1. The liability of a party for whom a surety or guarantor within the statute of fraud makes himself answerable, must be a clear and ascertained

legal liability, capable of being enforced against the party himself. Thus, if the party be a minor or a married woman, or under any other legal disability as to forming binding contracts, it is manifest that a promise by a third person to answer for him or her in a matter within the range of that disability, can not be affected by the statute of frauds. That is, the promise to answer for a debt or default of another must be collateral to a clear and ascertained legal contract. If there is no such legal contract, the promise is not a collateral, but an original one, and does not come within the statute of frauds.

W. O. Brown being a minor at the time that E. Y. Brown promised and agreed to become responsible for and pay to the Farmers and Merchants National Bank the advances made, and for which this suit was brought; and said W. O. Brown being a minor during the whole time that said advances were being made, and said advances being made upon the faith of the promises on the part of the said E. Y. Brown that he would pay same, such promise and agreement on the part of E. Y. Brown was not within the statute of frauds, and the said E. Y. Brown, by reason of said promise and agreement, became liable to said bank for said advances, which are the debts sued for by the plaintiff herein, and the lower court did not err in so holding. Brandt on Surety., secs. 42, 44; Chitty on Con., 499; Wood on Fraud, p. 303, sec. 163; King v. Summitt, 38 Am. Rep., 145; 73 Ind., 312; 2 Pars. on Con., 7 ed., p. 4; Baldwin v. Hiers, 73 Ga., 739; Chapin v. Lapham, 20 Pick., 470.

2. A president and director of a national bank is a trustee and confidential officer of same, and stands in a fiduciary relationship to said bank, and under no circumstances should he do any act that would be likely to render his personal interests antagonistic to those of the bank. Such an officer who, knowing a party to be a minor and without means, induces and directs the bank through its cashier to open an account with such customer, and by his direction to the cashier establishes the custom of paying the overdrafts of such customer and consents for such overdrawn account to be closed by notes, and countenances, connives, and allows such transactions without any authority from the board of directors, fails in his duty to the bank, and on the insolvency of such customer becomes personally responsible to the bank for such notes and overdrawn accounts; and more especially would he become thus responsible if he caused and induced the cashier to open and continue such account and close part of it with notes, upon the promise that he would see the same paid, and that he would subordinate the collection of a private debt of his on said customer to such advances thus made by the bank, and upon the insolvency of such customer to attempt to appropriate all of his property to the payment of his private debt. Apperson v. Bank, 10 S. W. Rep., 801; Bank v. Wilcox, 60 Cal., 126, 139–142; Loan Assn. v. Lyon, 29 N. J. Eq., 110, 111; Williams v. Riley, 34 N. J. Eq., 401; Austin v. Daniels, 4 Denio, 300; Wardell v. Railway, 103 U. S., 658; Ward v. Davidson, 1 S. W. Rep., 850; Rose v. Hayden,

57 Am. Rep., 145, 153–156; Taylor on Corp., sec. 627; Mitchell v. Reede, 61 N. Y., 139; Bain v. Brown, 56 N. Y., 288, 289.

3. Where two parties, A and B, are creditors of C, and both of their claims are secured by mortgages or a lien on the only property owned by C, and not more than sufficient to satisfy the claim of A, and A's indebtedness was created at the instance and request of B, and upon the faith of the promise and agreement of B that A's claim should be paid prior to his claim, and that he (B) would see that A's claim should be paid, though on the face of said mortgages or liens B's claim may be preferred to A's, yet B will in equity be estopped from claiming such preference or priority, and the proceeds of the sale of the said property will, in an equitable proceeding, be applied first to the payment of A's claim; and more especially will this be the case when B stands in a fiduciary and trust relationship to A, and is in law or good conscience duty bound to pay A's claim and see that it is secured and collected, C being responsible and insolvent. Whitehead v. Fisher, 64 Texas, 638, et seq.; Sanders v. Barlow, 21 Fed. Rep., 836–842; Finn v. Donahoe, 87 Mich., 292–295; 83 Mich., 165; Corbin v. Kincaid, 33 Kan., 649; Henry & Coatworth Co. v. Bond, 55 N. W. Rep., 643; Utley v. Dunkelberger, 53 N. W. Rep., 408; Faxon v. Faxon, 28 Mich., 159; Dickerson v. Colgrove, 100 U. S., 578; Davis v. Dyer, 56 N. H., 143.

Counsel, supporting the doctrine held by the Court of Civil Appeals as to the validity of the verbal promises to answer for the debts of the minor, argued, "that the promise to come within the statute of frauds must be collateral to another clearly ascertained *legal liability.* If the concurrent original promise does not constitute a *legal* liability, then the promise of the adult would not be collateral, but an original one, and would not come within the statute of frauds," citing and discussing many authorities: Tied. on Neg. Inst., sec. 48; Tyler on Infancy, secs. 46, 92; Story on Con., sec. 69; 1 Rand. on Com. Paper, pp. 273, 274; Dan. on Neg. Inst., sec. 233; Turner v. Gaither, 83 N. C., 357; Edgerly v. Shagood, 25 N. H., 51; Tibbetts v. Gerrish, 25 N. H., 41; Wilcox v. Routh, 12 Conn., 551; Thrupp v. Fielder, 2 Esp. Rep.; Benham v. Bishop, 9 Ky., 330; Proctor v. Sears, 4 Allen, 95; Catlin v. Maddox, 49 Ky., 492; Edmonds v. Mister, 58 Miss., 765; Bennett v. Collins, 52 Conn., 1; Petty v. Rouseau, 94 N. C., 352; Harmen v. Killing, 5 Esp., 105; Williams v. Moor, 11 Meeson & W., 265; Henelly v. Margaritz, 3 Barr (Pa.), 228; Horner v. Dipple, 31 Ohio St., 72; Fetrow v. Wiseman, 40 Ind., 148; Hoit v. Underhill, 9 N. H., 436; Curtin v. Patton, 1 S. & R., 305; Reed v. Boskers, 4 Sneed (Tenn.), 118; Norris v. Nance, Rich. (S. C.), 164; Chambers v. Wharey, 1 Bailey (S. C.), 28; Petty v. Roberts 7 Bush (Ky.), 410; Thing v. Libbey, 16 Me., 57; Savage v. Lichlyter, 26 S. W. Rep., 12; Taylor v. Dansby, 42 Mich., 84; Burgess v. Murrell, 4 Taunt., 468; Chandler v. Parks, 3 Esp., 76; Jaffray v. Treebain, 5 Esp., 47; Roche v. Chaplin, 1 Bailey (S. C.), 418; Harris v. Huntback, 1 Burr., 373.

DENMAN, ASSOCIATE JUSTICE.—During the year 1891 E. Y. Brown was a member of the board of directors and president of the Farmers and Merchants National Bank, of Cleburne, Texas, which was duly incorporated under the laws of the United States in reference to national banks. W. O. Brown, a minor, was a nephew of E. Y. Brown, and was, at the beginning of the transactions hereinafter referred to, indebted to him in the sum of about $3000. The bank advanced to W. O. Brown on his account between January and April 20, 1891, various sums of money, so that on said latter date he owed the bank a balance of $2350, for which, on said date, W. O. Brown executed to the bank his note for $2500, due six months after date, with interest after maturity at the rate of 1 per cent per month, and 10 per cent attorney's fees if legal proceedings be used in collecting—the $2500 principal representing the said $2350 and interest charged thereon to maturity of said note.

After the execution of this note the bank continued to accommodate W. O. Brown, until his overdrafts, on July 10, 1891, amounted to $1200, for which amount he, on said date, executed his note to the bank, payable on demand, with the same stipulations as to interest and attorney's fees as contained in the first note above. Between the date of this last note and the 7th day of September, 1891, the bank continued to carry the account of said W. O. Brown in the same way as before, and by said latter date his overdrafts amounted to $847.04; and on the 7th day of September, 1891, he drew from the bank an additional sum of $400.

During all this time W. O. Brown had been engaged in the grocery business, just across the street from the bank, and on this latter date, after drawing said last named sum, he executed a trust deed conveying his entire stock of goods to his father, John C. Brown, in trust to secure the payment of his said indebtedness to his uncle, E. Y. Brown, and to the bank, the former being preferred over the latter.

Soon after the execution of the first note aforesaid, W. O. Brown deposited with the bank, as collateral to secure his indebtedness, notes to the amount of about $1600, which notes the bank returned to him just before the execution of the trust deed, as the cashier claims, to be collected, and the proceeds to be paid to the bank on his indebtedness; but he did not return the notes or the proceeds thereof.

It appears, that after this suit was brought, W. O. Brown, through E. Y. Brown, repaid to the bank said $400, and through said John C. Brown, placed with the bank, as collateral for his said indebtedness, various accounts amounting to $1470, out of which the bank had to date of trial collected about $1361.99, with which it paid off said open account of $847.04, and credited said $1200 note with $514.85. The evidence tends to show, that the accounts amounting to $1470 were placed with the bank in lieu of the accounts amounting to $1600, turned over to W. O. Brown.

The cashier of the bank, whose testimony was corroborated by various other witnesses, testified, that he was unwilling to extend a line of credit to W. O. Brown, or let him have any money from the bank,

on account of his minority, and on account of the fact that he was so largely indebted to E. Y. Brown, and so stated to E. Y. Brown before any advances were made; that thereupon E. Y. Brown, before any moneys were advanced, and at various times during the running of the account aforesaid by W. O. Brown with the bank, and with full knowledge of the notes and overdrafts, requested the cashier to pay the overdrafts of said W. O. Brown, and stated that he, said E. Y. Brown, would see that it was all right, and that he would not receive or collect a cent of the money W. O. Brown owed him until the bank was paid all the money W. O. Brown might owe it on said advances. That, upon the faith of these statements and promises of E. Y. Brown, he allowed W. O. Brown to open the account, and extended the credit out of which said indebtedness grew; that but for such statements and promises he would not have loaned any money to W. O. Brown, but that "after making the loans he looked to both of them for payment."

E. Y. Brown, in his testimony, denied in detail the evidence of the cashier and other officers of the bank tending to establish his instrumentality in inducing the bank to extend credit to W. O. Brown, or his promises to be responsible for same.

The pleadings in this case cover nearly seventy-five pages of typewritten record, and twenty-seven assignments of error have been made in the application for writ of error to this court. We will therefore only state in a general way the issues necessary to an understanding of the questions of law deemed by us essential to be determined.

The bank brought this suit against W. O. Brown, E. Y. Brown, and the trustee, John C. Brown, asking judgment against the two former parties for the advances to W. O. Brown, and asking to have its claim established as a preference lien on the property in the hands of the trustee over the claim of E. Y. Brown, which was preferred by the terms of the trust deed, and asking the appointment of a receiver. The court below appointed a receiver, who, under order of court, took possession of and sold the property included in the trust deed, and holds the proceeds subject to its orders.

The amended petition on which the case was tried set out in detail all the facts outlined above, and prayed for such judgment as the bank was entitled to under all the facts. It is not necessary to notice the answer of W. O. Brown, as he has not appealed.

E. Y. Brown, among other things, pleaded, (1) that if he ever made any promise to pay the debt of W. O. Brown to the bank, it was not in writing, and that no action could be maintained thereon; (2) that he was not in any way instrumental in inducing the bank to advance money to W. O. Brown; (3) that after he became aware of the fact that the bank had loaned the money represented by the $2500 note, he, in order to protect the bank, induced W. O. Brown to deposit with the bank as collateral the notes aforesaid, amounting to $1600, and that the bank had negligently returned same to W. O. Brown, whereby

the security of the value of $1600 was lost, and that therefore, if he should be held liable to pay the indebtedness of W. O. Brown, he was entitled to a credit of $1600 thereon; (4) that his lien on the property described in the trust deed was superior to that of the bank.

In accordance with the verdict, the court rendered judgment in favor of the bank against W. O. and E. Y. Brown for $4045.22, and interest at 6 per cent, and that the trustee take nothing by his cross-bill, and that the receiver pay the money in his hands into court, to be applied first to payment of costs, and the balance to be applied as a credit on said judgment.

The first proposition urged by the bank in support of the judgment is, that the promises of W. O. Brown to pay the overdrafts were void, and did not create a debt, by reason of the fact that said Brown was a minor when the promises were made, and that therefore the promise of E. Y. Brown to pay same was not a "promise to answer for the debt of another," within the meaning of the statute of frauds, and therefore was binding upon him, though not in writing.

The point to be determined then is, whether the minority of W. O. Brown rendered his contract void, for if it was not thereby void, it is clear that the facts above stated constituted him a debtor to the bank, and the promise of E. Y. Brown was, within the terms of the statute, "a promise to answer for the debt of another."

Is the executory contract of a minor void—without any binding force or efficacy in law—a mere moral obligation, serviceable only as a consideration to support a ratification thereof after majority?

This is the contention of the bank, the maintenance of which is necessary to support the proposition above stated.

The question as to whether the executory contract of an infant is void or voidable has often been before the courts of last resort in England and the United States in cases widely differing in character, and it has been almost universally decided, that such a contract is not void, but voidable at the election of the infant. We will cite a few of the instances in which the question has been determined, in order to illustrate the reason of the rule.

A petition in a suit on a promissory note showing the same to have been executed by a feme covert will not support a judgment by default, unless it states facts showing that the particular note was given for a purpose with reference to which the law allows her to contract, for she is in general without capacity to contract. 24 Texas, 215; 28 Texas, 368.

But can it be contended, that a petition on a note against an adult showing that it was executed by him during his minority would not support a judgment by default? Conn v. Coburn, 7 N. H., 372. If it will support such judgment, it must be upon the principle that the element of infancy in the contract, as shown on the face of the petition, does not negative all contracting capacity in the defendant, but affirms in him a capacity to make not an absolute, but a qualified con-

tract, one binding and valid as to all others, with the privilege to the maker of avoiding the payment of same only on the plea of infancy. If the petition had also shown on its face affirmatively that the note was a forgery, it would have stated a complete defense to an action thereon, and would not have supported a judgment by default.

If a writ of error would reach the said judgments against the married woman and on the forged note, but not the judgment against the adult in the contract made during infancy, it must be on the ground that the latter contract has more binding force than the two former, and is therefore not void.

It is held, that by virtue of the contract of employment, a minor, of sufficient skill and experience to comprehend the nature and dangers of the employment, assumes the risks ordinarily incident thereto, including negligence of fellow servants, and where such minor is injured by such negligence the master is not liable; for the contract of employment through which alone the master can defend is not void, but merely voidable. It fixes the relationship between the master, the minor, and the coservant, and by the rules of law applicable to that relationship, the rights of the minor must be determined as to all injuries received during the continuance of the contract from any of the assumed risks. Railway v. Carlton, 60 Texas, 397; Gartland v. Railway, 67 Ill., 498; Fisk v. Railway, 72 Cal., 38; Curran v. Mfg. Co., 130 Mass., 374; Railway v. Adams, 105 Ind., 151; Railway v. Hammersley, 28 Ind., 372.

It has been held, that the agreement of a minor to pay premiums on an insurance policy is not void, but voidable at the option of the infant, and therefore the company can not resist payment of a loss on the ground that the policy was not binding for want of mutuality. Monaghan v. Ins. Co., 53 Mich., 243.

The Supreme Court of Wisconsin held, that a contract by a minor to serve three years for a specified sum was not void, but voidable, and therefore the minor, having performed the contract on his part by rendering the service, could recover *on the contract* the stipulated compensation. Leonard v. Warriner, 13 Wis., 179.

In Alabama, where by statute it was a penal offense to entice away a servant serving under a written contract, it was held, that the defendant, having enticed away a minor, could not defend on the ground that the minor's contract was void, and therefore not a *contract* within the statute, for the contract of the minor was not void, but voidable at his election only. Murrell v. The State, 44 Ala., 367.

It has also been held, that a lien given by a minor is only voidable at his instance, and can not be avoided by a subsequent lienholder under the same person, though such subsequent lien be given after minority had ceased; and this, too, though the minor in the same suit had pleaded his minority in defense of the prior lien. The court held, that the defense of minority was personal to the infant, and could not be

set up by the subsequent lienholder even in the same suit.    Baldwin v. Rosier, 1 McCrary's Rep. (C. C.), 384.

If a third party had verbally guaranteed the performance by the minor of either of the contracts above, could said courts have held such guaranty not within the statute on the ground that the contract of the minor was void? Certainly not without violating the principle upon which such decisions rest.

In the case of Dexter v. Blanchard, 11 Allen, 365, the Supreme Court of Massachusetts decided the very question before us, holding that the debt due from the minor was not void, but voidable at his election, and that therefore the verbal promise of the father to pay same was within the statute, and could not be enforced.

The only case which we have been able to find which holds the promise of the minor void is King v. Summitt, 73 Indiana, 312, and the expression in the opinion on the subject does not seem to have been called for by the issue before the court.    No reasons are given in support of the proposition that the executory contract of the infant is void, and no authority is cited except Brown on the Statute of Frauds, section 156.    We do not consider this case, on this question, as supported by reason or authority of decided cases.    In fact, the same court holds the contract of an infant to render services as being merely voidable, not void.    Railway v. Adams, 105 Ind., 151; Railway v. Hammersley, 28 Ind., 372.

Many text writers state the proposition, that the contract of the infant is void, but upon a careful examination of the cases cited by them, we are of the opinion that they do not support such a doctrine. To undertake a review of these cases would serve no useful purpose, and would unduly prolong this discussion.    Most of them will be found discussed in Throop's treatise on the Validity of Verbal Agreements, sections 257 to 268.

To hold the executory contract of a minor void would unsettle the law in many of its branches.    It would necessitate the holding, that the promise of a minor can not furnish a consideration for the promise of an adult, and the latter's promise would be void both for want of consideration and for lack of mutuality; whereas the contrary is the settled law, based upon the proposition that the infant's contract is only voidable.

We are of opinion, that the promise of the minor W. O. Brown was not void, and that the promise of E. Y. Brown to answer for his indebtedness to the bank was within the statute of frauds, and no action can be maintained thereon, because not in writing.    It results, that if E. Y. Brown's liability depends solely upon such promise, this action can not be sustained against him.    Cummings v. Powell, 8 Texas, 80; Ferguson v. Railway, 73 Texas, 344; Askey v. Williams, 74 Texas, 294.

The second proposition urged by the bank in support of the judgment is, that though E. Y. Brown is not liable on his promise, neverless, being a director and president of the bank, he was a trustee of its

funds, and it was an actionable breach of trust for him to be instrumental in procuring the advancements to be made to the minor W. O. Brown.

Under the Act of Congress with reference to national banks, the directors are elected annually by the stockholders, and before entering upon the discharge of the duties of such office, each director is required to make oath that he will, so far as the duty devolves on him, diligently and honestly administer the affairs of the association.

From their number the directors elect the president. The president and directors thus elected and qualified constitute the board of directors, which has control and management of the affairs of the bank.

Thus the interests of the stockholders and depositors, and of the various members of the commercial world dealing directly or indirectly with the bank on the faith of its capital and proper management, in a fund which, from its very nature and the business in which it is employed, is easily dissipated, is practically placed in the uncontrolled power of the board of directors. In the very nature of things, those interested, other than the directors and officers under their immediate control, can have but little knowledge of the details of its business, and less ability to guard their interests. The directors are therefore charged with a delicate trust, from which the beneficiaries are powerless to discharge them, and which they have sworn to administer diligently and honestly, so far as the duty devolves on them. This is especially true of the president, who is not only a director but also the chief executive officer of the bank, and who, from the nature of his office, naturally has great influence upon the policy of the bank and the conduct of the various employes in the discharge of their duties.

It is not our purpose to discuss the question of his liability for nonperformance or mistake of judgment in the performance of his duties. The question here is, what, if any, liability attaches to the president of a bank who, by verbal promise of collateral liability, induces the cashier to pay out its funds to a minor, whereby it is lost. He is presumed to know the law, and therefore knows that no action can be maintained upon his collateral promise or the promise of the minor if the proper defenses are made as above indicated. In other words, he, as the principal trustee of the funds of the bank, advises a loan thereof to a minor from whom he knows the bank can not coerce payment, with no security but his own collateral promise, upon which he knows no action can be maintained against his will. It is his plain duty not only not to advise such a loan, but to use his influence to prevent its consummation.

Can an agent or trustee loan the funds of his principal to an infant or married woman, on a voidable or void promise, without personal responsibility? To so hold would be to declare that he could not be liable for a breach of trust.

In the case before us the jury could not, under the evidence and charge, have found any verdict against E. Y. Brown without finding,

that he requested the cashier to make advances to the minor W. O. Brown, promising verbally that he would see it paid. This fact must then be taken as established by the verdict, and it is admitted that E. Y. Brown was director and president of the bank during these transactions.

Upon these facts, under the principles above discussed, we are of the opinion that E. Y. Brown is liable to the bank for the loss sustained by reason of said loans to the minor, on the ground that he was guilty of a breach of the trust reposed in him, whereby the said loss was occasioned. We do not consider the fact that E. Y. Brown promised to see same repaid as essential to the bank's right to recover; but such fact was admissible to show the means used to induce the cashier to make the loans, just as was the fact of his relationship to the minor and the latter's indebtedness to him, to show motive. Upon this ground, he can only be held liable for the balance due on the actual advances, with lawful interest, and not for conventional interest or attorney's fees. Bank v. Wilcox, 60 Cal., 126; Loan Assn. v. Lyon, 29 N. J. Eq., 110; Williams v. Riley, 34 N. J. Eq., 398; Word v. Davidson (Mo.), 1 S. W. Rep., 846; Wardell v. Railway, 103 U. S., 651.

We are further of the opinion, that E. Y. Brown, being guilty of a breach of trust, and liable therefor as above indicated, will not in equity be allowed to assert the prior lien given him in the trust deed by the insolvent minor, against the sum for which he is liable as indicated above, especially so in view of the promise made at the time of the advances, that the bank's money should be repaid first. Since E. Y. Brown is personally liable by reason of the application of equitable doctrines, a court of equity will discharge such liability out of the fund in the hands of the receiver, though E. Y. Brown may have a prior lien on such fund at law. It would be contrary to the rule of giving complete relief in equity by decree, for the court to turn over the fund in satisfaction of the debt from W. O. to E. Y. Brown, and then award execution against E. Y. Brown in favor of the bank for a sum which is a lien on the same fund. Corbin v. Kincaid, 33 Kan., 649; Sanders v. Barlow, 21 Fed. Rep., 836; Finn v. Donahue, 87 Mich., 292; Faxton v. Faxon, 28 Mich., 159; Henry v. Bond, 55 N. W. Rep., 643; Mitchell v. Reed, 61 N. Y., 123; Utley v. Dunkelberger, 53 N. W. Rep., 408.

Under the charge of the court, the jury found that the bank was not guilty of any negligence in delivering the $1600 collateral notes to W. O. Brown for collection for account of the bank. Certainly E. Y. Brown, having become liable as above indicated, can not be discharged in whole or in part by any act of the bank which does not constitute negligence in attempting to collect the collateral for the benefit of all concerned in the discharge of such liability.

Whether it was negligence to return the collateral to W. O. Brown for collection was a question of fact for the jury, of which this court has no jurisdiction. We therefore can not disturb the verdict and judgment on this issue.

The petition set up all the facts, and prayed for such relief as the bank might be entitled to under the law applicable thereto.

The jury rendered verdict against W. O. Brown and E. Y. Brown for $4045.22, which, as we understand it, included the balance of principal, interest, and attorney's fees stipulated in the notes executed by W. O. Brown. W. O. Brown makes no complaint, and therefore we affirm the judgment as to him, his liability being separate and distinct from that of E. Y. Brown. E. Y. Brown, as above indicated, is not liable on the contract, and therefore not liable for stipulated interest and attorney's fees provided for in said notes.

The bank is entitled to judgment against E. Y. Brown on the verdict only for the money advanced to W. O. Brown and lawful interest, and for the establishment of such judgment as a prior lien on said fund in the hands of the receiver, as above indicated; and therefore the trustee, John C. Brown, is not entitled to any judgment, he having been removed by the appointment of a receiver, because he was attempting to pay E. Y. Brown first.

If within ten days from this date the bank files in this court a remittitur of so much of said judgment against E. Y. Brown as exceeds the sum of $2350 advanced to April 20, 1891, and $685.15 balance on the advances represented by the $1200 note given July 10, 1891, with legal interest from said dates, the judgment will be affirmed against him for such advances and interest, establishing priority of lien therefor on the fund in the hands of the receiver; otherwise it will be reversed and remanded for another trial in accordance with the views herein expressed.

*Reversed and rendered.*

Delivered May 20, 1895.