Danny Roland Tucker was convicted for the first degree murder of Crossville Police Officer Stevie L. Thompson. He was sentenced to life imprisonment, fined $20,000, and ordered to pay $666.50 in court costs and a victim's compensation fee of $2,000. Two issues are raised on this appeal from that conviction.
 I
Tucker argues that the trial court should have granted his motion and dismissed the indictment because it charged two crimes in the same count and was so ambiguous that he could not determine what acts constituted the crime. We find that the motion to dismiss was properly denied.
At trial, the prosecution proved that, on the night of September 13, 1986, Crossville Police Officer Stevie L. Thompson was in uniform and on duty. Officer Thompson, driving a marked police patrol car, stopped the car driven by Willie Mae Tucker and arrested her for driving under the influence of alcohol. Danny Roland Tucker, who had been a passenger in the car driven *Page 60 
by his stepmother, got out of the car. When Officer Thompson informed Tucker that he was under arrest for public intoxication, Tucker resisted and a struggle developed between the two men. The altercation ended when Tucker gained possession of the officer's pistol and shot him in the head.
Tucker was indicted in December of 1986. He was arraigned on January 6, 1987, and "granted leave to file additional pleadings or motions to the indictment within 10 days." On January 14th, Tucker filed his motion to dismiss. The issue now argued has been preserved for review by timely objection. Rule 16.3(a)(1), A.R.Cr.P. Temp., provides that such a motion must be made "at or before arraignment or by such later date as may be set by the court."
The charging portion of the indictment appears as follows:
 "Danny Roland Tucker, whose name to the Grand Jury is otherwise unknown than as stated, did intentionally cause the death of Stevie L. Thompson, by shooting him with a pistol while the said Stevie L. Thompson was on duty as a Police Officer for the Town of Crossville, DeKalb County, Alabama, a Municipal Corporation, and Danny Roland Tucker knew that the said Stevie L. Thompson was on duty as a Police Officer, or because of the official or job related act or performance of the said Stevie L. Thompson as a Police Officer for the Town of Crossville, DeKalb County, Alabama, a Municipal Corporation, which official or job-related act or performance Danny Roland Tucker knew the said Stevie L. Thompson performed as a Police Officer, and which official or job-related act or performance was, to-wit: the act of arresting or attempting to arrest Willie Mae Tucker for the offense of Driving Under the Influence of Alcohol committed within the town limits of the Town of Crossville, DeKalb County, Alabama, a Municipal Corporation, or the act of arresting or attempting to arrest Danny Roland Tucker for the offense of Public Intoxication committed within the town limits of the Town of Crossville, DeKalb County, Alabama, a Municipal Corporation in violation of Section 13A-5-40(a)(5) of the Code of Alabama."
This indictment is based on § 13A-5-40(a)(5), Code of Alabama 1975, which, at the time of Tucker's indictment, read as follows:
"(a) The following are capital offenses:"
* * * * * *
 "(5) Murder of any police officer, sheriff, deputy, state trooper, federal law enforcement officer, or any other state or federal peace officer of any kind, or prison or jail guard, while such officer or guard is on duty or because of some official or job-related act or performance of such officer or guard."[1]
Reduced to its simplest wording the indictment charges that Tucker intentionally murdered Thompson "while . . . Thompson was on duty as a Police Officer . . . and . . . Tucker knew . . . Thompson was on duty as a Police Officer, or because of the official or job related act or performance of . . . Thompson as a Police Officer . . . which official or job-related act or performance . . . Tucker knew . . . Thompson performed as a Police Officer. . . ." The indictment then describes the "official or job-related act or performance" as "the act of arresting or attempting to arrest Willie Mae Tucker for the offense of Driving Under the Influence of Alcohol . . . or the act of arresting or attempting to arrest Tucker for the offense of Public Intoxication. . . ."
"An indictment is sufficient which substantially follows the language of the statute, provided the statute prescribes with definiteness the constituents of the offense." Ex parteAllred, 393 So.2d 1030, 1032 (Ala. 1981). "An indictment which pursues the language of the statute is sufficient, and a charge in the alternative does *Page 61 
not make it bad." Murrell v. State, 44 Ala. 367, 369
(1870), overruled on other grounds, Langham v. State,55 Ala. 114 (1876). See also § 15-8-23, Code of Alabama 1975.
The indictment in this case accurately conforms to the statutory language of § 13A-6-2(a)(1) defining intentional murder and of § 13A-5-40(a)(5) defining the capital murder of a peace officer. The indictment properly alleged Tucker's knowledge of Thompson's capacity as a police officer, even though the element was not set forth in § 13A-5-40(a)(5) before its 1987 amendment. An element of the offense defined by § 13A-5-40(a)(5), prior to its amendment, was that the defendant knew that the victim was a peace officer on duty.Ex parte Murry, 455 So.2d 72 (Ala. 1984). SeeState of Alabama Criminal Code Indictment and WarrantManual, 5-25, Alabama Law Institute (Revised 1988).
Subsection (a)(5) of § 13A-5-40 states only one offense despite its alternative language. The offense defined is the capital murder of a peace officer. That offense may be committed by the intentional killing of a peace officer (1) "while such officer is on duty" or (2) "because of some official or job-related act or performance."
The present situation is analogous to the case of Sissonv. State, 528 So.2d 1159, 1163 (Ala. 1988), wherein our Supreme Court held that "driving 'under the influence of alcohol' and driving with '.10% or more by weight of alcohol in [one's] blood' are but one offense . . . [which] can be proved by two alternative methods."
"When an offense may be committed by different means or with different intents, such means or intents may be alleged in an indictment in the same count in the alternative." §15-8-50, Code of Alabama 1975. "An apparent purpose of these several provisions [§ 15-8-50, 51, 52] is to obviate the necessity of a multiplicity of counts, permitting one count to serve the purposes accomplished by several at common law. . . ." Horton v. State, 53 Ala. 488, 492 (1875). The indictment was properly framed to conform to the proof. It charged only one offense — capital murder of a peace officer — which was committed for one of two reasons: either because the officer was trying to arrest Tucker's stepmother or because the officer was trying to arrest Tucker. This indictment completely satisfied the constitutional requirements of due process. Summers v. State,348 So.2d 1126, 1132 (Ala.Cr.App.), cert. denied, Ex parteSummers, 348 So.2d 1136 (Ala. 1977), cert. denied,434 U.S. 1070, 98 S.Ct. 1253, 55 L.Ed.2d 773 (1978). See Davisv. State, 505 So.2d 1303, 1304 (Ala.Cr.App. 1987) (operating a motor vehicle "while under the influence of intoxicating liquors or narcotic drugs"); Wilson v.State, 84 Ala. 426, 4 So. 383 (1888) (murder "by striking him in the head . . . or by choking with a piece of . . . cord"); King v. State, 137 Ala. 47, 34 So. 683 (1903) (murder "by hitting him or by striking him with a miner's pick, or by stabbing or cutting him with a knife, or with some sharp instrument").
 II
Tucker argues that his motion for a change of venue should have been granted because of extensive pretrial publicity and because most of the jurors had heard or read something about the case.
Of the initial 66 venire members, three were excused and 22 were eventually struck for cause. As best this Court can determine, five of these 22 venire members were removed because of their views on capital punishment and one was removed because she was related to the victim. The remaining 16 members were removed because of some personal opinion of Tucker's guilt or knowledge about the facts of the case. At the conclusion of the voir dire and after hearing the arguments of counsel, the trial judge denied the motion for a change of venue:
 "THE COURT: All right. I'm going to deny that motion. Obviously there has been a considerable amount of public interest in the case of a lot of the members of the venire, most of them knew about the case, knew something about the case, or heard about the case in some manner. However, most of the jurors, even those who have some knowledge of the case, *Page 62 
have indicated that they felt like they could render a fair and impartial verdict based upon the evidence and the law in the case. I have been rather liberal in granting the defendant's challenges as a means of recognizing and dealing with the fact that we do have a considerable number of people on this jury from the community in which this offense is alleged to have occurred, the Crossville community, and I feel like that the challenges that I have granted have gone a long way in solving that problem."
The comment constitutes an accurate summarization of the facts surrounding this issue. We find that the trial judge did not abuse his discretion in denying the requested venue change.
"The relevant question is not whether the community remembered the case, but whether the jurors at [the defendant's] trial had such fixed opinions that they could not judge impartially the guilt of the defendant." Patton v.Yount, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2891,81 L.Ed.2d 847 (1984). "The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved." Ex parte Grayson, 479 So.2d 76, 80 (Ala.), cert. denied, Grayson v. Alabama, 474 U.S. 865,106 S.Ct. 189, 88 L.Ed.2d 157 (1985). "Absent a showing of abuse of discretion, a trial court's ruling on a motion for change of venue will not be overturned." Grayson, 479 So.2d at 80. Even where the evidence for and against a motion for a change of venue is conflicting, the exercise of a trial judge's discretion in denying the motion will not be interfered with.Horn v. State, 98 Ala. 23, 13 So. 329, 330 (1893). "Before its action will be reversed, this court must see affirmatively that error has been committed. It is not enough that it may not clearly appear the ruling below was right, or that we, acting as a court of original jurisdiction, would have hesitated to have decided as the primary court has decided; but we must see, and see clearly, that its action was wrong."Hawes v. State, 88 Ala. 37, 7 So. 302, 306 (1890).
Our review of the jury selection process in this case shows that every venire member who indicated an opinion that Tucker was guilty and could not put that opinion aside was removed for cause. The record shows no abuse of discretion by the trial judge in denying the request for a change of venue.
Our review of the record convinces this Court that Tucker received a fair trial. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] This section was subsequently amended to read: "Murder of any police officer . . . while such officer or guard is on duty, regardless of whether the defendant knew or shouldhave known the victim was an officer or guard on duty, or because of some official or job-related act or performance of such officer or guard." § 13A-5-40(a)(5), Code of Alabama 1975, 1988 Cumulative Supplement (emphasis added). This amendment was effective August 12, 1987.
[EDITORS' NOTE: PAGES 63-80 CONTAINS DECISIONS WITHOUT OPINIONS.] *Page 456